FRED S. ROGERS V. MOORE LYNN, STATE AUDITOR, AND GEORGE H. SHEPPARD, COMPTROLLER.

No. 6056.   Decided May 16, 1932.
Motion for Rehearing Overruled July 6, 1932.
(49 S. W., 2d Series, 709; 51 S. W., 2d Series, 1113.)

*York & Rogers* and *A. M. Felts,* all of Austin, for relator.

The action af the district judge in approving the acts of relator as county attorney under Article 1034 of the Code of Criminal Procedure as same existed at the time of such approval was a judicial act adjudicating the correctness and justness of said accounts and the question as to whether the services had been performed entitled the officer to his fees. Rochelle v. Lane, 105 Texas, 351, 148 S. W., 558; Binford v. Robinson, 112 Texas, 84, 244 S. W., 807; State v. Bigham, 280 S. W., 1062; Woods v. Terrell, 285 S. W., 293.

*James V. Allred,* Attorney General, *R. G. Waters* and *Homer C. DeWolfe,* Assistants Attorney General, and *Jerome Sneed, Jr.,* of Austin, for respondents.

If there be a dispute over material issues of fact in this case, this Honorable Court would be without jurisdiction to pass on this cause unless respondents' answer be accepted as true. Furnish v. Robison, Land Commissioner, 106 Texas, 79, 157 S. W., 744; Mackey v. Robinson, 116 Texas, 373, 291 S. W., 1102; Sheppard v. Terrell, 97 Texas, 458; Hanna v. Robinson, 128 S. W., 108.

The approval of the account of an officer for fees by a judge of the district court is not a judgment against the State. Binford v. Robinson, 244 S. W., 807; State v. Bigham, 280 S. W., 1062; State ex rel. Daily v. Auditor, 41 Mo., 13.

In passing upon and approving or disapproving claims of officers for fees, the district judge is not performing the functions of a district court, but is only performing special duties imposed upon him by statute, and if he approves an account for fees not provided by law, or if he approves fees provided by law where the services entitling the officer thereto have not in fact been performed, his action is void. State v. Bigham, 280 S. W., 1062; Binford v. Robinson, 112 Texas, 84, 244 S. W., 807; Article 1034, C. C. P., 1925; Article 1035, C. C. P., 1925; State of Nevada v. Doron, 5 Nev., 399; 22 R. C. L., 455, and 459.

MR. JUDGE CRITZ delivered the opinion of the Commission of Appeals, Section A.

This is an original mandamus proceeding instituted in the Supreme Court by Fred S. Rogers, Relator, against Moore Lynn, State Auditor, and George H. Sheppard, State Comptroller, Respondents, to compel them to approve two accounts against the State represented by two deficiency certificates held by relator, and to further compel them to draw warrants on the State Treasurer in payment thereof.

Simply stated, the relator's petition alleges facts which show that he was the duly constituted and acting County Attorney of Fannin County, Texas, during the years 1929 and 1930; that as such officer he earned certain fees in felony cases; that he holds two deficiency certificates, one for $1,000, and one for $1,152, dated August 2, 1929, and July 28, 1930, respectively; that said certificates were issued by the Comptroller, and represent felony fees for cases where final convictions were had at the June, 1929 and 1930 terms of the District Court of Fannin County, Texas; that all requirements of law have been complied with in the making out of said accounts, their presentation to and approval by the district judge, and all other things required for their presentation and approval by the Comptroller. It is then alleged that at the time said accounts were presented to the Comptroller there was no fund available to pay the same, and that the two above mentioned deficiency certificates were therefore issued to relator. Relator then pleads that the 42nd Legislature passed an appropriation to pay certain deficiencies including the two certificates held by relator. It is then alleged that after the effectiveness of the above appropriation bill relator presented his two claims to respondents and demanded that they be approved and warrants drawn on the State Treasurer in payment thereof, and that respondents have refused to do so.

The respondents have answered and in effect admit the allegations of relator's petition except as hereinafter shown.

Respondent then plead that the appropriation bill above mentioned contains the following provision:

"It is especially provided herein that before any claim is paid from funds hereby appropriated the same shall have the approval of the State Comptroller and the State Auditor."

Respondents then plead that the effect of the above statutory provision contained in the above appropriation bill is to make such appropriation purely a conditional one, that no legal duty

rests upon them to approve these accounts if they choose not to do so, and that the Legislature had the right and power to impose such conditions on the appropriation because it had the absolute power to withhold any appropriation in the first instance. In support of this contention respondents cite Linden v. Finley, 92 Texas, 451, 49 S.W ., 578.

We do not question the soundness of the rule announced in Linden v. Finley, supra. However, we do not consider it necessary to decide whether it has application here, as will later appear in this opinion. We therefore pretermit any further discussion of this contention.

After pleading as above respondents further answer and say that the above accounts are, in the main, fraudulent, and represent claims for many items and fees never legally earned by relator. In connection with this plea respondents say that they have exercised the powers and duties conferred and imposed upon them by law to carefully examine and investigate these accounts, and that having done so and found them fraudulent and unjust in whole and in part they have refused to approve the same or to issue warrants in payment thereof.

In this connection we note that the demand is for the approval of both of said accounts or claims in full.

In connection with the above allegations of fraud, respondents say that it is not true, as alleged by relator, that the claims made the basis of this action are for fees earned in felony cases finally convicted and no appeal taken, but, that in truth and in fact, the claims are composed chiefly of fees claimed in numerous cases in which relator pretends to have represented the State in felony habeas corpus cases in which a fee of $16 is charged for each case. It is then alleged by respondents that there are ninety-three of such habeas corpus fees charged for in the instant claims at $16 each, and that said alleged fees are false and fraudulent. Respondents then plead that in a little more than two years the relator has presented claims against the State for 317 habeas corpus cases, ninety-three of such cases being included in the instant claims, and the balance included in claims already presented and paid prior to the rejection of the instant case.

Respondents then say that the fraudulent and illegal claims already collected by relator from the State constitute a valid cause of action in favor of the State against relator for an amount greater than any just claim relator has against the State, and that therefore under the provsions of Article 4350, R. C. S. of Texas, 1925, as amended by Acts of 1931, 42 Leg-

islature, Regular Session, p. 400, respondents are prohibited from paying said claims. Respondents then plead the above statute which reads as follows:

"No warrant shall be issued to any person indebted to the State, or to his agent or assignee, until such debt is paid."

Respondents plead in detail the facts which they contend constitute the habeas corpus fees included in this and prior accounts fraudulent. In this connection they plead that it was the practice and fraudulent scheme of relator in every instance where a person was charged with an offense of the grade of felony, to charge numerous offenses involving one act or transaction in separate complaints; that then a separate writ of habeas corpus would issue on each of such complaints; and a separate fee of $16 charged in each instance. It is then alleged that when the grand jury met the relator still carrying out the fraudulent scheme, would cause the same person to be indicted in separate indictments for numerous offenses growing out of the same transaction, and that habeas corpus writs would again issue on each indictment, and another $16 fee be charged in each such instance. In connection with the above allegations it is alleged that in a little more than two years the relator herein has presented to the Comptroller for payment claims for 317 habeas corpus cases pretended to have been held in Fannin County, Texas, during such time.

As illustrative of the practice alleged by the respondents to have been fraudulently and habitually fostered and followed by the relator, both as to fees here involved and fees heretofore collected by relator, we quote the following allegations made by respondents, and by the Honorable James V. Allred, Attorney General, and by Honorables R. G. Waters and Howard C. DeWolfe, his assistants, for and on behalf of the State.

"Respondents' answer shows that it was the custom in Fannin County during the tenure in office of Relator for a writ of habeas corpus to be sued out after the examining trial in each and every felony complaint filed, and to sue out a writ of habeas corpus in each and every case in which a felony indictment was returned into the district court. Where one defendant was charged with more than one complaint, a separate writ was procured covering each complaint and each indictment.

"In one instance two men were charged with the commission of fourteen burglaries. Both of these men are alleged to have burglarized the same identical houses at the same time. Both were arrested. Fourteen complaints were filed in the

Justice Court against each man. Applications for writs of habeas corpus were made by each defendant; fourteen writs were granted to each defendant by the court; all twenty-eight writs were issued simultaneously, by the same court, directed to the same sheriff, commanding the sheriff to produce one and the same defendants into the same court at the same time. The grand jury met and seven indictments were returned against each defendant. The same procedure was followed, and seven more such writs of habeas corpus were granted, and the Relator in this case has collected a fee of $16 in each of the forty-two habeas corpus proceedings as outlined above.

"In another case one man was charged with the forgery of two checks in three separate complaints involving one check, and three separate complaints involving another check. These three complaints in each case were for forgery, possessing a forged instrument, and passing a forged instrument. Six habeas corpus writs were issued to the same sheriff, commanding him to produce one and the same defendant into the same court at the same time. The grand jury met and returned six indictments, and the same procedure was followed as after the examining trial, and as a result, six additional writs were issued, making a total of twelve writs of habeas corpus growing out of the forgery of two checks. These cases illustrate concretely the procedure in the District Court of Fannin County during the tenure in office of the Relator herein, and he has collected heretofore, or by this action seeks to collect, a fee of $16 for multiple writs of habeas corpus in the manner as outlined above."

An inspection of this record shows that issues of fact are presented sustaining the above allegations. It is further shown by the answer that the instant accounts or claims include ninety-three habeas corpus cases in which the practice above alleged was followed. In fact, the answer alleges that the above practice was followed in each and every felony case both when complaint was filed and again after indictment, and that such practice was fraudulently built up by the relator for the purpose of creating fees against the State.

■ We think we have made a sufficient statement of the case to properly decide the issues. In this connection we hold that for the purposes of this proceeding we must accept the material allegations of the answer of respondents, and the Attorney General and his assistants, as true.

The relator contends that the approval of his accounts by

the district judge is final, and has foreclosed any right or power of the respondents, or either of them, to go behind such approval to determine any question of fact relating to the matters here involved. In other words the relator contends that since it is admitted that the district judge has approved these claims in the way and manner provided and required by law, their validity and justness are finally foreclosed and adjudicated, and that it is but a ministerial duty for the respondents to approve and issue warrants in settlement of these claims. Relator cites Rochelle v. Lane, 105 Texas, 351, 148 S. W., 558, as authority to support this contention.

The respondents, and the Attorney General and his assistants, on their behalf, and on behalf of the State, contend that the fact that the district jurge has approved these accounts does not deprive the respondents of the right, or relieve them of the duty, of carefully examining such accounts and refusing to approve them if they are not just claims against the State. In support of this contention the authorities which we shall later discuss are cited.

At this point we will state that the writ of habeas corpus is perhaps the most sacred and valuable right known to our system of government, and both our State and Federal Constitutions guarantee such writ as a right to our citizens. Section 12, article 1, Texas Constitution; section 9, article 1, U. S. Constitution. However sacred the right to the writ of habeas corpus may be, it is our opinion that the answer of the respondents, and the Attorney General and his assistants, alleges facts and circumstances relating to these and prior accounts of relator, which, if true, tend to show that the great majority of the writs of habeas corpus here involved were not sued out for the purpose of protecting the rights of any person deprived of his liberty, but primarily for the fraudulent purpose of carrying out a fraudulent scheme devised and fostered by relator for the purpose of creating fees of office for himself. In this connection we do not hold or attempt to hold as a matter of fact that these accounts are tainted with fraud, but we do hold that the answer of respondents and the Attorney General and his assistants raises a fact issue on that question. It therefore becomes clearly evident that this application must be dismissed unless such fact issues of fraud have been foreclosed by the approval of these and prior accounts by the district judge. We shall therefore now address ourselves to that question.

In the beginning of the discussion of the above question we are compelled to admit that under the holding in Rochelle v.

Lane, supra, the order of the district judge in approving these and prior claims has the force of a judgment finally binding on the State, and these respondents as to both questions of law and of fact. We are further of the opinion that if such decision is to be adhered to these respondents are left with no alternative but to approve these accounts and issue warrants in payment thereof. (Of course, this is pretermitting any decision of respondent's claimed plenary right under the above quoted provision of the appropriation bill here involved).

In this condition of the record, the Commission, being of the opinion that Rochelle v. Lane was erroneously decided, went into conference with the Supreme Court itself, and after fully and carefully considering said opinion, together with the statutes and principles of law involved, the Court directs us to say that they consider that they have already overruled the holding in Rochelle v. Lane, in principal, by the opinions we shall later cite and discuss. Furthermore, the Supreme Court directs us to now here expressly overrule such decision for the following reasons:

The statutes directly involved in the Rochelle case, and in this case, are Articles 1033, 4 and 5, C. C. P. of Texas, 1925. These statutes read as follows:

Art. 1033. "Before the close of each term of the district court, the district or county attorney, sheriff and clerk of said court, shall each make out a bill of the costs claimed to be due them by the State, respectively in the felony cases tried at that term; the bill shall show:

"1. The style and number of each case.

"2. The offense charged against the defendant.

"3. The term of the court at which the case was disposed of.

"4. The disposition of the case, and that the case was finally disposed of, and no appeal taken.

"5. The name and number of defendants; and, if more than one, whether they were tried jointly or separately.

"6. Where each defendant was arrested, or witness served, stating the county in which the service was made, giving distance and direction from county seat of county in which the process is served.

"7. The court shall inquire whether there have been several prosecutions for a transaction that is but one offense in law. If there is more than one prosecution for the same transaction, or a portion thereof, that could have been combined in one indictment against the same defendant, the judge shall

allow fees to sheriffs, clerks and district and county attorneys in but one prosecution.

"8. Where the defendants in a case have severed on the trial, the judge shall not allow the charges for service of process and mileage to be duplicated in each case as tried; but only such additional fees shall be allowed as are caused by the severance."

Art. 1034. "The district judge, when any such bill is presented to him, shall examine the same carefully, and inquire into the correctness thereof, and approve the same, in whole or in part, or disapprove the entire bill, as the facts and law may require; and such bill, with the action of the judge thereon, shall be entered on the minutes of said court; and immediately on the rising of said court, the clerk thereof shall make a certified copy from the minutes of said court of said bill, and the action of the judge thereon, and send the same by registered letter to the Comptroller.

"Fees due district clerks for recording sheriff's accounts shall be paid at the end of said term; and all fees due district clerks for making transcripts on change of venue and on appeal shall be paid as soon as the service is performed; and the clerk's bill for such fees shall not be required to show that the case has been finally disposed of.

"Bills for fees for such transcripts shall be approved by the district judge, and when approved, shall be recorded as part of the minutes of the last preceding term of the court."

Art. 1035. "The Comptroller upon the receipt of such claim, and said certified copy of the minutes of said court, shall closely and carefully examine the same, and, if correct, draw his warrant on the State Treasurer for the amount due, and in favor of the officer entitled to the same. If the appropriation for paying such accounts is exhausted, the Comptroller shall file the same away, if correct, and issue a certificate in the name of the officer entitled to the same, stating therein the amount of the claim and the character of the services performed. All such claims or accounts not sent to or placed on file in the office of the Comptroller within twelve months from the date of the final disposition of the case in which the services were rendered, shall be forever barred."

It will be noted that Article 1033, supra, provides the way and manner in which bills or claims against the State for felony criminal fees shall be made out, and presented to the district judge for his approval. Article 1034 provides for the presenta-

tion of the bill, which means the claim, to the district judge, and further provides that he shall examine the same, etc., and approve or disapprove, in whole or in part, as the facts may require. It is then provided that the bill, together with the action of the judge thereon, shall be entered in the minutes of the court, and immediately on the rising of the court, which means immediately on the adjournment of the court, the clerk shall make a certified copy of such minutes showing the bill, and the action of the judge thereon, and send the same to the Comptroller. Article 1035 provides that the Comptroller, upon receipt of such claim, and said certified copy of the minutes of said court, shall *"closely"* and *"carefully"* examine the same and if found *"correct"* draw his warrant, etc. It is thus seen that the clear and explicit language of Article 1034 gives the district judge the power and makes it his duty to examine and approve, in whole or in part, as the facts require, the classes of claims here involved. However, when the provisions of the three articles are read and considered together, which it is our duty to do as they relate to the same subject matter, it becomes clearly evident that it was the intention and purpose of the Legislature to provide a double check on this character of claims in order to protect the State against unjust and illegal bills. This is unquestionably true because, in addition to the requirements of Article 1034, relating to the powers and duties of the district judge, the Legislature proceeded in the very next article to make it the duty of the Comptroller to *"closely"* and *"carefully"* examine such claim, and then in very carefully chosen language the statute only makes it the duty of such officer to issue a warrant or deficiency certificate in the event he finds the claim or bill to be *"correct."* Certainly no plainer or more comprehensive language could be used to express the legislative intent that no warrant or deficiency certificate should be issued unless the Comptroller finds the claim *"correct"* and the term *"correct"* as here used certainly means that such officer must find the account just and legal.

■ The opinion in Rochelle v. Lane seems to base its conclusion that the provisions of Article 1035 cannot be construed so as to authorize the Comptroller to go behind the approval of the district judge provided for in Article 1034 to ascertain the correctness of the claim on the theory that the judge's act in approving it is judicial. Of course if it is judicial the power could not be conferred on the Comptroller to re-examine the matters thereby determined. We think, however, that such act cannot be held to be judicial. In the first place the

statutes themselves clearly negative such construction or legislative intent. This we have already demonstrated. In the next place this court has already held that a district judge can be compelled by a mandamus to approve a correct officer's account. Binford v. Robertson, 112 Texas, 84, 244 S. W., 807. In the opinion of both the Court and the Commission this holding overrules Rochelle v. Lane in principle because it is an elementary principle of law, that a mandamus will not lie to tell a judge how to perform a judicial act. Of course, if the law requires the judge to act judicially and he refuses to do so, this Court by a mandamus will compel him to act, but it will not attempt to determine his order or judgment in so doing.

There are other reasons which convince us that the approval of these accounts by the district judge can not be treated as a judicial act. If such order is judicial then it has the force and effect of a judgment against the State. Certainly this was not the legislative intent. The proceeding has none of the ear marks of a judgment; there is no provision for citation or notice of any character; the judgment is simply entered ex parte, and no provision is made or attempted to be made for a hearing in open court. The judge is at liberty to make his investigation in any way he sees fit. Finally there is no appeal from the order in any event. State v. Bigham, 280 S. W., 1062. If the orders were a judgment it could be appealed from.

It follows from what we have said that the act of the judge in approving these accounts was not judicial and cannot have the force of a judgment, but merely a condition precedent to the right to present the same to the Comptroller for payment.

■ The discussion above clearly demonstrates that the answer of the respondents and the Attorney General and his assistants alleges facts, which, if true, bar the relief here sought by relator. This court is without jurisdiction to try these fact issues.

We therefore recommend that this application for mandamus be dismissed.

The opinion of the Commission of Appeals is adopted, and the petition for mandamus is dismissed.

C. M. Cureton, Chief Justice.

### ON MOTION FOR REHEARING.

A motion for rehearing filed by relator was referred by the Supreme Court to the Commission of Appeals, Section A, for their opinion thereon, and was overruled by the court on July

6, 1932, in accordance with recommendation of the Commission of Appeals as contained in the following opinion:

MR. JUDGE CRITZ delivered the opinion of the Commission of Appeals, Section A, on rehearing.

This case is before us on motion for rehearing filed by relator.

Relator complains in such motion to the fact that we failed to state in our original opinion that he denied under oath the allegations of respondents' answer. We now make the statement that he did in all things deny the allegations of fact contained in the answer. The answer having alleged facts, which, if true, defeated the right to the mandamus here sought by relator, and he having denied such allegations, issues of fact were presented, and this being a court of law and not of fact, this proceeding had to be dismissed.

Relator further complains of the statement in our original opinion to the effect that for the purposes of this proceeding this Court must accept as true the allegations contained in the respondents' answer. Of course we did not intend to say that we found said allegations to be true in fact, but merely to say that for the purpose of determining our jurisdiction the allegations are treated in law as true.

We have read and carefully considered the above motion and recommend that the same be in all things overruled.