William W. FISHER, Jr., Relator,

v.

DALLAS COUNTY DEMOCRATIC EXECUTIVE COMMITTEE et al., Respondents.

No. 15770.

Court of Civil Appeals of Texas.

Dallas.

March 4, 1960.

Henry Klepak and Norman Zable, Dallas, for relators.

Spencer Carver and Warren Whitham, Dallas, for respondents.

DIXON, Chief Justice.

Relator, William W. Fisher, Jr., also known as Bill Fisher, with our permission

has filed an application for a writ of mandamus. In his application he asks us to direct certain Democratic Party officials to place his name as a candidate on the ballot for the primary election to be held May 7, 1960 to elect the Party's nominee for the office of County Commissioner, District 3, Dallas County, Texas. The respondents are Edward J. Drake, Chairman, and Manuel Debusk, Secretary, of the Dallas County Democratic Executive Committee, and the Dallas County Democratic Executive Committee itself as a political entity.

## Facts

Material facts pertaining to the controversy are undisputed. On January 6, 1960 Fisher filed his application to have his name placed on the official ballot for the primary election to be held May 7, 1960. His application, in due form in all particulars, was accepted and filed by respondents. At the same time Fisher paid the sum of $2,400 as a filing fee. The money was accepted by respondents and a receipt was issued to Fisher. The receipt in words and figures is as follows:

"No. 48    D 024512  Date 1–6–1960  Cash    Check **V**
Received of Bill Fisher              $       ¢
Two Thousand Four Hundred & no/100  2,400.00
Address.  1505 S. Corinth Rd.
For Filing Fee, County Commissioner, Dist. 3
Unpaid Balance $————.  Demo. Exec. Committee
      Thank you.  By   /s/ M. Nicholson.
Protected Receipt Co.
Form No. 401 117612."

Fisher was of the belief that by filing his application and paying the $2,400 as a filing fee on January 6, 1960 he had satisfied all requirements necessary for him to be eligible to have his name placed on the ballot and to be certified as a candidate in the democratic primary.

On or about February 10, 1960 Fisher entered Baylor Hospital for major surgery.

The day before, that is, on February 9, 1960, respondents had mailed a letter to Fisher at the address named by him in his application, which was his home address. This letter was as follows:

"Mr. Bill Fisher
1505 S. Corinth Rd.
Dallas 3, Texas

"Dear Mr. Fisher:

"The amount assessed by the Dallas County Democratic Executive Committee to have your name placed on the Official Ballot in the Primary Elections of May 7, and June 4, 1960 as a candidate for County Commissioner, Precinct 3 is $2,640.00.

"The assessment has a credit of $2,400.00 which accompanied your application for place on the ballot, leaving a balance of $240.00.

"This balance of fee must be paid by a cashier's check, certified check or cash not later than mid-night Saturday, February 13, 1960.

"Make check payable to the 'Dallas County Democratic Executive Committee'. You may mail check by registered mail but it must be postmarked not later than mid-night Feburary 13 or you may bring it in person to the office of the Democratic Executive Committee of Dallas County, Room 120, Old Courthouse, Dallas 2, Texas. This office will be open until 12:00 o'clock noon on said date, February 13, 1960.

"Respectfully yours,
Edward J. Drake, County Chairman
By: /s/ Manual DeBusk,
Manuel Debusk, Secretary."

The stamped envelope in which above letter was enclosed shows that the address "1505 S. Corinth Rd." had been stricken out and the address "Bx-6877" had been substituted.

Fisher, in Baylor Hospital, did not receive the letter prior to midnight Saturday February 13, 1960. He did not know that an additional payment of $240 on his filing fee was required of him. He did not know that his name was to be stricken from the ballot because of his failure to pay the additional $240 by midnight February 13, 1960 until he read about it in the newspapers on

Sunday morning February 14, 1960 while he was still in Baylor Hospital.

Immediately after learning of the situation, Fisher sent his wife with $240 to the home of Edward J. Drake, County Chairman. Drake accepted the additional payment conditionally, giving his receipt, which is as follows:

"The sum of $240.00, cash was rec'd by me for Bill Fisher, Candidate for Dallas Co. Commissioner, Dist. 3 on Sunday, Feb. 14th, and accepted subject to determination as to legality thereof by the Democratic Executive Committee. /s/ Ed Drake, Chairman, Democratic Committee."

■ Thereafter respondents reached the conclusion that Fisher had failed to comply with V.A.T.S., Election Code, Arts. 13.08, 13.15 and 13.18. Because he had failed to pay his full filing fee of $2,640.00 by midnight February 13, 1960, it was held that he was not entitled to have his name on the ballot as a candidate.*

### Opinion

■ Respondents contend that applicable election statutes are mandatory in nature; and the deadlines established by said statutes must be strictly observed if confusion and uncertainty are to be avoided both among candidates for office and among election officials in the mechanics of holding primary elections.

V.A.T.S., Election Code, Art. 13.08, as amended in 1959, provides that prior to the assessment of candidates the county committee shall estimate the necessary expenses for holding the general and second primaries; and on second Monday in February (February 8, 1960 in this case) preceding each election the committee shall apportion the cost among the candidates in a just and equitable manner. The Statute then further provides as follows:

"The committee shall, by resolution direct the chairman to immediately mail to each person against whom an assessment is made a statement of the amount of such expenses apportioned to him, with the request that he pay the same to the county chairman on or before the Saturday before the third Monday in February thereafter. * * * It shall be sufficient to meet the requirements of this law to mail by registered letter to the chairman before the deadline herein provided, as shown by the postmark on the letter, a money order, a certified check, or a good personal check. * * *".

We have quoted a portion of Art. 13.08 in order to point out that under the express wording of the statute the letter notifying candidates of the amount of their filing fee is merely to *request* that they pay the fee on or before the Saturday before the third Monday in February thereafter; and to point out also that under the express terms of the statute it would have been permissible for Fisher to have mailed the additional $240 on his filing fee anytime before midnight Saturday February 13, 1960, as shown by the postmark on the letter. In such event though the requirement of the law would have been fully met, the County Chairman would not have received the additional sum of $240 until the delivery of the mail on Monday, February 15, 1960. As it was he actually received the money a day earlier: on Sunday when Mrs. Fisher brought the money to his home.

---

* In his affidavit relator alleges that contemporaneous with the filing of his application on January 6, 1960, he inquired of respondents as to the amount of filing fee which would be required, and was informed that the filing fee would be $2,400.00. Respondents in a counter-affidavit deny having made any such statement. Disputed fact questions cannot be determined in connection with applications for mandamus. Rogers v. Lynn, 121 Tex. 467, 49 S.W.2d 709, 51 S.W. 2d 1113; Dick v. Kazen, 156 Tex. 122, 292 S.W.2d 913. Therefore in our study of this application we have not taken into consideration the above disputed fact issue, but have concerned ourselves only with the undisputed facts.

V.A.T.S., Election Code, Art. 13.15, Sec. (a) provides as follows:

"No person's name shall be placed on the ballot for a district, county or precinct office who has not paid to the county executive committee the amount of the estimated expense of holding such primary apportioned to him by the county executive committee as hereinbefore provided."

It will be observed that the above quoted Section provides that the name of no candidate shall be placed upon the ballot who has not paid his assessment, but it does not fix a deadline for such payment.

We have found no case exactly in point but in 1944 in King v. Fitch, 181 S.W.2d 926, 928 the San Antonio Court of Civil Appeals discussed Arts. 1308 and 3116 V.A.C.S., which were then in effect and are the forerunners and sources of Arts. 13.08 and 13.15 of our present Election Code. At that time the law provided that the letter notifying candidates of their assessment should request that the candidate pay same on or before the Saturday before the fourth Monday in June thereafter. Otherwise the language used in Arts. 3108 and 3116 V.A.C.S., was almost identically the same as the language now used in Arts. 13.08 and 13.15 of our Election Code.

Though the facts in King v. Fitch, supra, differ in some particulars from the facts of the case now before us the holding of the Court in that case seems to us in point here. The Court held that (1) in words "as hereinbefore provided" in Art. 3116 would not be construed as meaning that the name of a candidate not paying his assessment on or before the fourth Monday in June should not be so placed on the ballot as provided in Art. 3108 unless such meaning was clearly expressed, since such construction would give Art. 3116 a highly penal effect; (2) there was no mandatory provision in the two statutes which provided that payment must be made on or before the Saturday before the fourth Monday in June; and (3) under Art. 3108 (now 13.08,

Election Code) it was within the discretion of the county chairman to accept payment of an assessment two days after the Saturday before the fourth Monday in June. In other words the county chairman had discretionary authority to accept payment of an assessment tendered two days later than the date named in the official letter requesting payment.

We shall not in this opinion attempt to formulate a rule to fit other and different factual situations which may arise in the future in connection with the application of our election laws. We shall simply hold that in this case there has been a substantial compliance by relator with the requirements of our election code, and his name should be placed on the ballot for the coming primary election.

The writ of mandamus will be granted. Respondents are hereby directed to place relator's name on the ballot for the primary election to be held on May 7, 1960 as a candidate for nomination by the Democratic Party for the office of County Commissioner, District 3, Dallas County, Texas.