Audie STROUD, Relator,

v.

D. J. BEGGERLY, County Democratic Chairman of Rusk County, Texas, et al., Respondents.

No. 999.

Court of Civil Appeals of Texas, Tyler.

Sept. 27, 1976.

R. L. Whitehead, Jr., Whitehead & Beckworth, Longview, for relator.

Dean W. Turner, Bath, Turner & Patterson, Henderson, for respondents.

McKAY, Justice.

The Relator, Audie Stroud, has petitioned this court for a writ of mandamus (1) to compel D. J. Beggerly, County Democratic Chairman of Rusk County to certify Relator as nominee of the Democratic Party for the office of County Commissioner of Precinct Three, Rusk County; (2) to order Calvin Barber, County Clerk of Rusk County to place Relator's name on the ballot for the general election to be held on November 2, 1976, as the nominee of the Democratic Party for the office of County Commissioner of Precinct Three, Rusk County; and (3) that Calvin Barber be enjoined from placing the name of Respondent, Dan Dickeson, on the ballot at the general election as the Democratic Party nominee for such office.

In the primary election for the Democratic Party in May, 1976, Floyd Moody was elected as the nominee for the office of County Commissioner of Precinct Three, Rusk County. Thereafter, on or about May 31, 1976, Floyd Moody died. Relator alleges that on or about June 9, 1976, a meeting was called at Mt. Enterprise, Texas, of all the election precinct chairmen of the Democratic Party for Commissioner's Precinct Three of Rusk County, and that of the ten election precinct chairmen in Commissioner's Precinct Three, seven of them appeared and voted on a nominee to fill the vacancy, and that the vote was unanimous that Audie Stroud, Relator, be, and he was nominated by such Precinct Executive Committee to be the Democratic Party candidate for County Commissioner for Precinct Three, Rusk County.

Attached to Relator's petition are seven affidavits. Six of these affidavits state that the affiant was one of the ten precinct chairmen for the Democratic Party for Commissioner's Precinct Three, Rusk County, and that the affiant was present on or about June 9, 1976, at a meeting of the Executive Committee of Commissioner's Precinct Three, Rusk County, held for the purpose of nominating a candidate for the office of County Commissioner of Precinct Three, Rusk County, and that Tom Bridges was elected chairman, and that Audie Stroud was nominated as the person whose name was to be placed on the ballot as the nominee of the Democratic Party in the general election. Five of the six affidavits state that, "I hereby vote to elect Tom Bridges as chairman of the executive committee of Commissioners Precinct 3, Rusk County, Texas, and I nominate Audie Stroud to fill the vacancy on the ballot created by the death of Mr. Moody and nominate Audie Stroud as the Democratic Party candidate for the office of County Commissioner of Precinct 3, Rusk County, Texas, and request that his name be placed on the ballot as the Democratic Party nominee." The affidavit of L. H. Buckner states that he was not present at the June 9th meeting, but it contains the above quoted language.

Also attached to the petition is a certificate of Tom Bridges that he was elected chairman of the Democratic Party Executive Committee of County Commissioner's Precinct Three, Rusk County, and that Audie Stroud was nominated at a meeting of the election precinct chairmen of Commissioner's Precinct Three of Rusk County, on June 9, 1976, "by the unanimous vote of the seven precinct chairmen present." The certificate says, "We request that Audie Stroud's name be placed on the ballot as the Democratic Nominee for County Commissioner, Precinct Number Three of Rusk County, Texas, for the general election to be held on November 2, 1976."

The affidavits were signed and sworn to on August 21 and 22, 1976, and Bridges' certificate was signed and sworn to on August 23, 1976. There are attachments indicating that the Certificate of Nomination signed by Bridges was delivered to Calvin

Barber, County Clerk, on or about August 23, 1976, and that copies of the affidavits were delivered to D. J. Beggerly, County Democratic Chairman, on August 23, 1976.

Respondents Beggerly and Dickeson challenge the action of the Executive Committee of Commissioner's Precinct Three and move to dismiss Relator's petition and alleged that there had never been any legally constituted meeting of the Executive Committee of Precinct Chairmen of Commissioner's Precinct Three for the purpose of nominating any candidate as Democratic nominee for Commissioner of Precinct Three, Rusk County, Texas, because (1) there was no notice of any meeting; (2) a meeting cannot be had by executing ex parte affidavits on a date when no meeting had been called; and (3) that no meeting could be held on August 21, 1976, because the terms of office of all of the Precinct Chairmen constituting the Commissioner's Precinct Executive Committee, except one, had expired, and the certificate of Bridges was, therefore, void.

Beggerly and Dickeson also allege in their sworn pleadings that only eight of the precinct chairmen in Rusk County filed for re-election in the Democratic primary; and these eight were elected, but under the provisions of Art. 13.18, Election Code, V.A. C.S., all other precinct chairmen went out of office on June 11, 1976, at midnight. Respondents further aver that Beggerly, as county chairman, called a meeting of the eight elected precinct chairmen at 2:00 P. M., September 1, 1976, after notice dated August 28, 1976, a copy of which notice was posted at the courthouse door and mailed by certified mail to each of the eight precinct chairmen and a copy delivered to all local news media. On the same date, it is alleged Beggerly posted notice at the courthouse and delivered same to the media inviting all persons interested in being considered for nomination as Democratic candidate for Commissioner of Precinct Three, Rusk County, to file an application with him as county chairman or with one of the ten election precinct chairmen of Commissioner's Precinct Three. At the September 1st meeting the eight elected and serving members of the County Democratic Executive Committee appointed persons to fill the alleged vacancies as election precinct chairmen throughout the county. It is alleged and sworn to by Respondent Beggerly in his motion to dismiss that he, as County Chairman, after notice, called a meeting of the ten precinct chairmen in Commissioner's Precinct Three, for September 7, 1976. Pursuant to said notices all ten of the precinct chairmen met at the time and place designated and proceeded to organize and to nominate Dan Dickeson as Democratic candidate for Commissioner's Precinct Three, Rusk County. Minutes of such meeting were filed with the County Clerk, and the name of Dan Dickeson was certified to the County Clerk as such nominee.

There are six affidavits dated September 1, 1976, executed by some of the seven precinct chairmen who were present at the June 9th meeting, five of whom executed the previously mentioned affidavits on August 21 and 22, 1976. The sixth affidavit of J. C. Latimer states that he was asked to sign an affidavit for Relator but refused. The five affidavits state that there was no formal organization of the meeting of the seven precinct chairmen on June 9, 1976, but by common consent Tom Bridges was elected chairman; that by common consent or by the consensus of opinion by four or five of those present it was thought "that Audie Stroud would be the man we could most likely get nominated." The affidavits further state that when the group met at Mt. Enterprise on June 9, 1976, they did not understand that they were nominating anybody but were merely making a recommendation to the County Democratic Executive Committee. Some of the affiants said in the September 1, 1976, affidavits that they did not realize when the August 21st affidavits were signed that the earlier ones were "worded so strongly as to indicate that we met for the purpose of making a nomination or that we made a nomination," or that the August 21st affidavit "leaves the wrong impression" and them some of them repudiate the earlier affidavits insofar as they

may be inconsistent with the ones made on September 1st.

Art. 13.18a(5) Election Code, V.A.C.S., provides that, "[T]he precinct chairmen of the election precincts within the commissioners precinct or justice precinct shall constitute the precinct committee."

Art. 13.56(b) Election Code, V.A.C.S., provides:

"If prior to the 20th day before the day of the election, a nominee dies or declines the nomination . . . the executive committee for the . . . precinct . . . may nominate a candidate to supply the vacancy. A certificate of such nomination, signed and duly acknowledged by the chairman of the executive committee, must be filed with the officer with whom the certificate of the original nomination was filed and must set forth the name of the original nominee, the cause of the vacancy, the name of the new nominee, the office for which he was nominated, and when, where, by whom, and how he was nominated. . . ."

Art. 1823, V.A.C.S., confers upon this court the authority to issue writs of mandamus and other writs necessary to enforce our jurisdiction. Art. 1735a, V.A.C.S., provides that Courts of Civil Appeals, along with the Supreme Court, shall have power or authority or jurisdiction to issue the writ of mandamus against any public officer or chairman or committee or member of such committee or officer of any political party to compel the performance of any duty imposed upon them by law.

We are met at the outset with the question of whether this court has jurisdiction to grant a writ of mandamus under the record presented here. We have concluded that we do not have jurisdiction because the record reveals there are disputed fact issues. The affidavits attached to Respondents' pleading repudiate the affidavits made by some of the same parties earlier insofar as the first affidavits are inconsistent with the second ones. Therefore, there is a disputed fact issue as to whether Audie Stroud was nominated by the Precinct Executive Committee on June 9, 1976, or on August 21, 1976, or whether he has been nominated in fact at any time. An appellate court does not have jurisdiction to entertain an application for a writ of mandamus when the sworn petition and sworn answer present a fact question. *Rogers v. Lynn,* 121 Tex. 467, 49 S.W.2d 709, 51 S.W.2d 1113 (Comm. of App., opinion adopted, 1932); *Lydick v. Chairman of Dallas County Republic Executive Committee,* 456 S.W.2d 740, 742 (Tex.Civ.App.-Dallas 1970, no writ); *Stevens v. Link,* 433 S.W.2d 779, 781 (Tex.Civ.App.-Texarkana 1968, no writ); *Donald v. Carr,* 407 S.W.2d 288, 292 (Tex.Civ.App.-Dallas 1966, no writ); *Prince v. Peurifoy,* 396 S.W.2d 913, 917 (Tex.Civ. App.-Dallas 1965, no writ); *Brown v. Walker,* 376 S.W.2d 854, 856 (Tex.Civ.App.-Beaumont 1964, no writ); *Cantrell v. Carlson,* 313 S.W.2d 624, 627 (Tex.Civ.App.-Dallas 1958, no writ); *Ferris v. Carlson,* 314 S.W.2d 295, 298 (Tex.Civ.App.-Dallas 1958, no writ).

Respondents alternative plea is granted, and the petition for writ of mandamus is dismissed for want of jurisdiction. The fact that the ballots for the general election to be held on November 2, 1976, must be printed very soon creates an emergency, and no motion for rehearing will be entertained.