

# The Attorney General of Texas

June 6, 1980

**MARK WHITE**
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

701 Commerce, Suite 200
Dallas, TX. 75202
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Bob Bullock
Comptroller of Public Accounts
LBJ State Office Building
Austin, Texas 78774

Opinion No. MW-192

Re: Investigative authority of the Comptroller of Public Accounts.

Dear Mr. Bullock:

You have asked a number of questions about the investigative authority of your office. Attorney General Opinion H-1063 (1977) concluded generally that the comptroller may not independently initiate investigations and examinations of the books and records of other state agencies when such audits would "parallel or duplicate the duties of the State Auditor," but the opinion did not specify areas of activity that would be parallel or duplicate. Your specific questions must be considered in the historical context of the two offices.

The position of state auditor was created in 1943 to replace an executive officer, the "State Auditor and Efficiency Expert," appointed by the governor. The auditor is appointed by the Legislative Audit Committee, an arm of the legislature, Acts 1943, 48th Legislature, chapter 293, at 429, and has authority to perform audits "of all accounts, books and other financial records of the State Government of any officer of the state, department, board, bureau, institution, commission or agency thereof," and to examine and audit "all fiscal books, records and accounts of all custodians of public funds, and of all disbursing officers of this state, making independent verifications of all assets, liabilities, revenues and expenditures of the state, its departments, boards, bureaus, institutions, commissions or agencies. . . ." V.T.C.S. art. 4413a-13.

The comptroller is an elected constitutional officer in the executive branch of government. The constitution requires him to "perform such duties as are or may be required by law." Tex. Const. art. IV, § 23. The comptroller has the duty to require that accounts presented to him for settlement be verified by affidavit; to require persons receiving money or property of which he keeps an account to render statements to him and settle their accounts after examination; to superintend the collection of all

moneys due the state; to audit the claims of all persons against the state "unless the audit. . . is otherwise specially provided for"; and to "[s]uperintend the fiscal concerns of the [s]tate, as the sole accounting officer thereof, and manage the same in the manner required by law." V.T.C.S. art. 4344. This statutory list of the comptroller's duties has remained largely unchanged since the early part of this century. In 1918, however, the comptroller was "authorized and empowered to perform the duties and functions of [the] office heretofore performed by the State Revenue Agent." Acts 1918, 35th Leg., 4th C.S., ch. 94, at 197. The executive office of state revenue agent, first created in 1891, was simultaneously abolished.

The duties and functions now assigned the comptroller by article 1.03, Taxation-General, V.T.C.S., are those previously performed by the state revenue agent. See Acts 1959, 56th Leg., 3rd C.S., ch. 1, at 187, former article 7057, V.T.C.S. Part of those duties had been assigned the state revenue agent in 1891 when the office was created. See Acts 1891, 22nd Leg., ch. 69, at 89. The remainder were added in 1899. See Acts 1899, 26th Leg., ch. 23, at 26. The original part of the statute that is now embodied in article 1.03, Taxation-General, V.T.C.S., reads:

> The Governor may, whenever in his judgment the public service demands it, direct the Comptroller to investigate books and accounts of the assessing and collecting officers of this State, and all officers and persons disbursing, receiving or having in their possession public funds, and to make such other investigations and perform such other duties in the interest of the public revenues as the Governor may direct. Whenever any such investigation is ordered by the Governor, the Comptroller shall report to him in writing the results thereof, and point out the particulars, if any, wherein the revenue laws have been violated or their enforcement neglected, together with the names of those delinquent therein. Whereupon the Governor shall institute civil and criminal proceedings through the Attorney General in the name of the State against such delinquent parties who are reported by the Comptroller to be delinquent. The Comptroller shall have power at any time to examine and check up all and any expenditures of money appropriated for any of the state institutions or for any other purpose or for improvements made by the State on State property or money received and disbursed by any board authorized by law to receive and disburse any State money. . . . When the [Comptroller], acting under the direction of the Governor, calls on any person connected with the public service to inspect his accounts, records or books, said person so called upon shall submit to said agent all books, records and accounts so called for without delay. (Emphasis added).

The part enacted in 1899  reads,  as embodied in article 1.03, Taxation-General, V.T.C.S.

> The Comptroller shall also have power and authority and it is hereby made his duty, to fully investigate any State institution when so <u>directed</u> by the Governor <u>or required</u> by information coming to his own knowledge.  He shall investigate the manner of conducting the same and the policy pursued by those in charge thereof, and the conduct or efficiency of any person employed therein by the State.  He shall examine into and report upon the character and manner as well as the amount of expenditures thereof, and investigate and ascertain all sums of money due the State from any source whatever, the ascertainment and collection of which does not devolve upon other officers of this State under existing law; and he shall report all such facts to the Governor. (Emphasis added).

The original provision was designed to complement the power given the governor by the 1876 constitution to demand accountings of executive officers and managers of state institutions, and to inspect their books and accounts. Tex. Const. art. IV, § 24. The state revenue agent was empowered to act only under the direction of the governor, and it was only when he was so acting that persons connected with the public service were required to "submit to said agent all books, records and accounts . . . without delay." That language is still found in article 1.03, Taxation-General, V.T.C.S., and we think the meaning remains the same.

The language added in 1899 expanded the revenue agent's possible scope of inquiry beyond fiscal matters. For the first time the statute expressly allowed him to investigate "the policy pursued by those in charge [of state institutions], and the conduct or efficiency of any person employed therein. . . ." He was to do so when "directed" by the governor or "required" by information coming to his own knowledge. So far as we can determine, the state revenue agent continued to be the agent of the governor, and his initial authority to launch an investigation under the statute depended upon gubernatorial direction, but once his investigation started, he was required to pursue it wherever it led, and to "report all such facts to the governor." Art. 1.03, Taxation-General, V.T.C.S. We think the comptroller is under the same duty, and that his investigative powers under article 1.03, Taxation-General , V.T.C.S., are wholly derivative of a discretionary power in the governor to initiate investigations.

We believe the legislature interpreted the predecessor of article 1.03, Taxation-General, V.T.C.S., in this way in 1929 when it first created the independent office of state auditor and efficiency expert. After granting the new officer authority to inspect books and records of all the departments of State Government and charging him to investigate custodians of public funds and disbursing officers and to examine all departments with special regard to duplication of efforts between departments, and the efficiency of their employees it concluded:

> Section 9.   The fact that there is now no State Auditor <u>and no</u> <u>official designated to audit and investigate the custodians of public</u> <u>funds and the various departments of the State Government</u> create an emergency .... Acts 1929, 41st Leg., 1st C.S., ch. 91 at 222. (Emphasis added).

In our opinion, article 1.03, Taxation—General, V.T.C.S., confers no <u>independent</u> power upon the comptroller to initiate investigations of state officers and institutions, but the governor is empowered to use the comptroller as his agent for such purposes.

In light of the foregoing discussion, we turn to your specific questions. The first to be addressed, is:

> Is the implied duty and power conferred upon the Comptroller to make inquiry and examine, without prior notice, all of the financial records in the possession of any person or state agency authorized by law to receive state money, for the purpose of determining if there are any such persons who have received and not accounted for any money that belongs to the state? For example, does the Comptroller have the power to conduct an audit at any time, without notice, of the records of any county tax assessor-collector in this state for the purpose of verifying that all state ad valorem tax and all state motor vehicle sales tax that has been collected by the assessor-collector has been reported and remitted to the state in accordance with TEX. REV. CIV. STAT. ANN. art. 7260 (Vernon 1960) and TEX. TAX.-GEN. ANN. art. 6.07 (Vernon Supp. 1978–1979)? And does the Comptroller have the power to conduct an audit at any time, without notice, of the Alcoholic Beverage Commission for the purpose of determining whether or not all permit fees and all taxes collected by the Commission on the sales of distilled spirits, wine, beer, ale and malt liquor have been reported to his office and remitted to the Treasurer in accordance with TEX. ALCOH. BEV. CODE ANN. §202.04, §205.02 and §205.03 (Vernon 1978)?

The question, as stated, has very broad implications. For example, "all the financial records in the possession of any person . . . authorized . . . to receive state money" would encompass even the personal checkbooks and federal income tax returns of state employees advanced travel funds. <u>Cf.</u> Attorney General Opinion H–74 (1973) (advance of expenses to state employees). The comptroller has no power to examine all records of such a broad description. Of course, he may make inquiry in a proper case, and it may be his duty to do so. Article 4344, V.T.C.S., does not empower the comptroller "to conduct an audit at <u>any time, without notice,</u> of the records of any county tax assessor" in order to verify that state taxes have been remitted to the state in accordance with article 7260, V.T.C.S., and article 6.07, Taxation-General, V.T.C.S. <u>See</u> Attorney General Opinion C–447 (1965). Compare the uses of the word "audit" in <u>May v. Wilcox Furniture</u> <u>Downtown, Inc.,</u> 450 S.W.2d 734, 739 (Tex. Civ. App. — Corpus Christi 1970, writ ref'd

n.r.e.), and in City of Houston v. Chapman, 145 S.W.2d 669 (Tex. Civ. App. — Galveston 1940, writ dism'd, judg. corr.).

The derivative nature of the comptroller's investigatory power over public agencies contrasts sharply with the independent power to investigate private business concerns accorded him by article 1.031, Taxation-General, V.T.C.S.. He has the power to settle the accounts of local tax collecting officers and to require proofs of the accuracy of the accounts before doing so, but under article 4344, V.T.C.S., he has no authority to demand to see the books and records of local officers except to verify accounts or claims. In a proper case he may condition approval of an account submitted by a local officer on the presentation to him of further proofs, but if access to a local official's books and records is refused, he must leave the account unsettled and refer the matter to other officers having general investigative powers, unless the governor has directed him to proceed under article 1.03, Taxation-General. See Rogers v. Lynn, 49 S.W.2d 709 (Tex. Comm'n App. 1932); Gallaway v. Sheppard, 89 S.W.2d 417 (Tex. Civ. App. — Austin 1935, writ dism'd). See V.T.C.S. art. 7260, § 7; Tax.-Gen. art. 6.02, V.T.C.S. art. 4344, §§ 3, 7, 8. Cf Attorney General Opinion O-4260 (1941).

Nor has he any independent authority to audit the Alcoholic Beverage Commission with respect to permit fees and taxes.

You also ask:

> Is the Comptroller responsible for determining who owes money to the state and how much they owe? If so, is the implied duty and power conferred upon the Comptroller to make inquiry and examine any contract for goods and services provided and paid for by the state for the purpose of determining whether or not the state has received what it paid for? For example, does the Comptroller have the right to investigate the supply purchase and inventory records of the Utility Department of the University of Texas at Austin for the purpose of determining the identity of the debtor(s) and amounts owed, if he has reason to believe that state money has been paid for supplies that were never delivered to the state?

The comptroller is responsible for determining who owes money to the state and how much they owe, but he does not have the exclusive responsibility or comprehensive power to do so. Article 4344, section 10, V.T.C.S., makes it the duty of the comptroller to:

> Examine and settle the accounts of all persons indebted to the State and certify the amount or balance to the Treasurer, and direct and superintend the collection of all monies due the State.

However, in 1912 the Texas Supreme Court concluded that the comptroller lacked power to independently determine facts that purported to support a sheriff's claim for monies certified correct by a district court. The comptroller had reason to suspect fraud. The Supreme Court said, however:

> The character of the examination must be defined by the means which the law furnishes to enable the officer to perform the duty enjoined. . . .
>
> The Comptroller . . . has no power to secure evidence. It cannot be denied that his means of examination is confined to the copy of the record; therefore, his examination must be confined to that as a report. . . .
>
> Indeed . . . the Comptroller has no facts nor power to obtain facts upon which to act otherwise than to test the work of the clerk. Rochelle v. Lane, 148 S.W. 558 (Tex. 1912) at 559, 560.

Twenty years later, after the office of state auditor and efficiency expert had been created, the foregoing decision was modified by Rogers v. Lynn, supra, another case of suspected fraud. The Rochelle v. Lane holding that the comptroller could not go behind the certification presented to him was overturned, and the comptroller was permitted to assert that article 4350, V.T.C.S., forbade him to issue a warrant to a person whose fraudulent schemes made him indebted to the state. But the court in Rogers v. Lynn, supra, did not hold or imply that the comptroller possessed independent power to "obtain facts" other than those deducible from the formal records presented him for review.

Although the Rogers v. Lynn court held that no warrant should be issued unless the comptroller finds the claim "correct," meaning "just and legal," the factual allegations which the court believed were made by both the comptroller and the state auditor. Both officers alleged they exercised the powers and duties imposed upon them by law "to carefully examine and investigate these accounts," and found them fraudulent. 49 S.W.2d 710. See also Gallaway v. Sheppard, supra, (comptroller disallowed sheriff's claim as a result of a reaudit by the auditor).

The comptroller has some discretion under article 4344, V.T.C.S., in approving claims and accounts, and in determining amounts owed the state, but he may not exercise that discretion in an arbitrary or absolute manner. See Fulmore v. Lane, 140 S.W. 405 (Tex. 1911). Nor does it allow him independently to inspect the books and records of other officials without invitation. See Navarro County v. Tullos, 237 S.W. 982 (Tex. Civ. App. — Dallas 1922, writ ref'd). Though such records might be otherwise available to the comptroller, an unlimited special right of access to them is not given him by article 4344, V.T.C.S. Cf. V.T.C.S. article 6252-17a (Open Records Act).

Consequently, the comptroller has no independent right under article 4344, V.T.C.S., to "investigate the supply, purchase and inventory records of the Utility Department of the University of Texas at Austin for the purpose of determining the identity of the debtors and the amounts owed." Of course, he should report his suspicions to the governor or the state auditor to obtain their assistance in bringing about an investigation. If an account of such property is kept in his office, he may require the persons having the management of it to "render statements thereof to him." V.T.C.S. art. 4344, § 7.

Your question as to whether article 1.03, Taxation-General, V.T.C.S., "expressly" grants you "the authority to examine any state agency expenditures, such as those queried," is answered by the foregoing discussions. The express authority granted by that statute is conditioned upon gubernatorial initiation.

In a similar vein, you ask:

> Does the Comptroller have the right to investigate any state agency at any time for the purpose of assuring himself that no state employee salary warrants have previously been issued to non-existent employees?

and

> Is the implied duty and power to inspect and evaluate the policies and methods followed by any person or state agency engaged in collecting money on behalf of the state conferred upon the Comptroller? For example, does the Comptroller have the right to inspect and evaluate the auditing and collection methods of the Alcoholic Beverage Commission with regard to all state taxes and fees collected by it?

The comptroller has no broad, independent power "to investigate any state agency at any time for the purpose of assuring . . . that no state employee salary warrants have previously been issued to nonexistent employees." Cf. Attorney General Opinion WW-1328 (1962) (comptroller lacks authority to determine whether particular employment violated Position Classification Act). Article 4344 section 2, V.T.C.S., gives the comptroller power to adopt regulations essential to the speedy and proper assessment and collection of the revenues of the state. He is to prescribe the form used in collecting public revenue and to specify the manner in which they are to keep their accounts. V.T.C.S. art. 4344, § 5. Moreover, he may "suggest" plans for improving and managing the general revenue. Id. § 17. However, the comptroller has no independent power under article 4344, V.T.C.S., to subject the office procedures and methods of other officials to his on-the-spot scrutiny. He may do so as an agent for the governor under article 1.03, Taxation-General, V.T.C.S., but otherwise, that power and duty is vested in the state auditor. V.T.C.S. arts. 4413a-13, 4413a-14, 4413a-16.

Another inquiry reads:

> Is the Comptroller impliedly required to keep a central record of all persons indebted or owing taxes to the state and to check all proposed expenditures of state money against such record, regardless of the nature or source of the liability to the state or whether the warrant is to be drawn against funds of the state that are kept in or outside the State Treasury?

V.T.C.S., article 4344, section 9 makes it the duty of the comptroller to "keep and settle all accounts in which the state is interested," without limitation. The state is "interested" in its funds whether kept in the state treasury or elsewhere. See Boyett v. Calvert, 467 S.W.2d 205 (Tex. Civ. App. — Austin 1971, writ ref'd n.r.e.). Appeal dismissed sub nom. Anderson v. Calvert, 92 S. Ct. 1316 (1972); Attorney General Letter Advisory No. 132 (1977). We conclude, therefore, that article 4344, V.T.C.S., contemplates the keeping of records by the comptroller that would enable him to identify persons indebted to the state or owing taxes to it. We think, too, that all warrants issued should be checked against the list of persons indebted to the state, for article 4350, V.T.C.S., specifies that no warrant is to issue to any person indebted to the state, or owing delinquent taxes to it.

The determination that a person is indebted to the state for article 4350, V.T.C.S., purposes does not necessarily lie with the comptroller. An official allegation of indebtedness must be made by those empowered to make one. Attorney General Letter Advisory No. 57 (1973). Cf. Sherman v. Hatcher, 299 S.W. 227 (Tex. Comm'n App. 1927) (construing article 4350).

Another set of your questions centers upon section 11 of article 4344, V.T.C.S., which reads:

> Among other duties, the Comptroller shall:
>
> . . . .
>
> 11. Audit the claims of all persons against the State in cases where provision for the payment thereof has been made by law, unless the audit of any such claim is otherwise specially provided for.

You couple this provision with article 4357, V.T.C.S., which forbids the preparation of warrants except upon the presentation of audited claims, and ask:

> Does the Comptroller have the duty and power to examine any such claimant regarding any matter that is material to his claim and to require him to produce any evidence necessary to verify the legal validity of his claim against the state, if the Comptroller considers such examination necessary? For example, was the Comptroller acting within the lawful limits of his authority when he sent a team of auditors to personnel of Southwest Texas State University for the purpose of determining whether or not vouchers previously submitted by the University, approved by the Comptroller's office, and paid by the Treasurer to persons for consulting services were in fact a subterfuge for payment of travel expenses incurred by those same persons as interviewees of the University? For example, does the Comptroller have the power to visit the premises of any state agency at any time, without prior notice, and require an accounting

of all employees listed on that agency's monthly payroll voucher filed with the Comptroller who are missing and unaccounted for, if any?

You also ask:

Is the Comptroller granted the authority to examine at any time the records, including any internal performance records used by any agency to measure its performance of its statutory functions for the purpose of advising the Governor, inter alia, whether or not the budget request submitted by that agency is based on reliable information, if he has reason to believe that such records are not being kept or are inaccurate or misleading?

The earlier discussion is applicable to these questions. The comptroller has no authority to demand unnecessary proofs or to conduct inquisitions about the propriety of past agency actions. Attorney General Opinion C-447 (1965). He has no independent power to send auditors to state institutions of higher learning to examine records and personnel in an attempt to establish the bona fides of vouchers upon which he previously issued warrants. See Attorney General Letter Opinion, Book 381, page 797, addressed to Geo. H. Sheppard, and dated April 16, 1938. Nor does he possess independent power to visit state agencies for the purpose of requiring them to account for the people on their payroll vouchers that are not on the premises at the time he visits them. Those activities duplicate or parallel functions of the state auditor. The same applies to the examination for budgetary purposes of internal records used by agencies to measure their performance of statutory duties. If the governor wishes the comptroller to take a more active investigatory role in establishing a basis for advice regarding budget requests, he may direct him to do so. The comptroller does have the duty to satisfy himself that claims presented to him are legal claims for which valid appropriations have been made, and to refer suspicious claims to agencies with larger investigatory powers, but if he refuses to issue a warrant when his legal duty to do so is clear, mandamus will lie. Norris v. Bullock, 580 S.W.2d 812 (Tex. 1979); S & G Construction Co., Inc. v. Bullock, 545 S.W.2d 953 (Tex. 1977). Cf. Denison v. Sheppard, 60 S.W.2d 1031 (Tex. 1933) (right unclear).

Two other questions are as follows:

With regard to the general duty to 'superintend and manage the fiscal concerns of the State, as the sole accounting officer thereof' provided in TEX. REV. STAT. ANN. art. 4344, §3 (Vernon 1976), and in view of the specific accounting and investigatory responsibilities expressly provided in art. 4344, §9, art. 4344b, §2, art. 4348 (Vernon 1976), and TEX. TAX.-GEN. ANN. art. 1.03 (Vernon 1969) . . . .

Is the Comptroller expressly given the duty and power to keep an accounting record of all receipts and disbursements of all state agencies and to check up and examine any such account for the

> purpose of determining its accuracy and legal conformity, regardless of whether or not the actual funds of any such account are kept in or outside the State Treasury?

and

> Do any of the State Auditor's duties provided in TEX. REV. CIV. STAT. ANN. arts. 4413(a) - 7a et seq. (Vernon 1976) duplicate any of the duties imposed upon the Comptroller by TEX. REV. CIV. STAT. ANN. art. 4344 et seq. (Vernon 1976) and TEX. TAX.-GEN. ANN. art. 1.03 (Vernon 1969) in terms of serving identical purposes?

Your question regarding the combined effects upon your powers of articles 4344, sections 3 and 9; 4344b, section 2; 4348, V.T.C.S.; and article 1.03, Taxation—General, V.T.C.S., are also answered above for the most part. Those provisions are to be read with other statutory provisions. The comptroller is under a duty to keep records of all accounts in which the state is interested, including accounts of funds and property maintained outside the state treasury, and to "audit" the accounts furnished him by state agencies for internal accuracy and facial legality. See Attorney General Opinion M—625 (1970). Cf. Fort Worth Cavalry Club v. Sheppard, 83 S.W.2d 660 (Tex. 1935); Corsicana Cotton Mills v. Sheppard, 71 S.W.2d 247 (Tex. 1934) (lack of valid appropriations for claims). But he has no independent power to conduct out-of-the-office investigations of suspected misrepresentations. That is a function of the state auditor, or of other officers, to whom the comptroller should report his suspicions, along with any internal evidence to support them that he has found in the accounts or reports submitted to him.

Your other question turns the basic inquiry around. You ask, "Do any of the State Auditor's [statutory] duties . . . duplicate any of the duties imposed upon the Comptroller [by statute] in terms of serving identical purposes?" If your question is limited to duties independently imposed upon the comptroller, the answer is "No," for the accounting and fiscal supervisory duties given the comptroller by article 4344, V.T.C.S., and similar statutes are complemented, not duplicated, by the auditing and investigatory duties imposed upon the state auditor. But the answer is "Yes" if the question encompasses those duties which may be assigned the comptroller by the governor pursuant to article 1.03, Taxation—General, for that statute anticipates that the governor may employ the comptroller as his agent to perform many investigatory or auditing tasks which duplicate those the state auditor is empowered to undertake. The arrangement provides a check upon the power of the state auditor and a means of testing the efficiency and fidelity of his office. The traditional appropriation act rider discussed in Attorney General Opinion H—1063, (1977), (see General Appropriations Act, Acts 1979, 66th Leg., article V, section 30 at V—45), does not affect the governor's power. It does no more than prohibit the expenditure of appropriated funds for hiring independent commercial auditors or private auditing firms to do what the office of the state auditor is designed and equipped to do. See Attorney General Letter Opinion, Book 365, page 815, addressed to G. R. White and dated July 17, 1935.

Lastly, you ask, "Have any of the Comptroller's duties and powers been repealed by implication and transferred to the State Auditor?"

On the basis of a 1948 opinion of this office, Attorney General Opinion H–1063 (1977) concluded that the 1929 and 1943 legislation establishing, first, the executive office of state auditor and efficiency expert and, later, the legislative office of state auditor, repealed by implication any independent authority the comptroller might have had theretofore to initiate investigations and examinations of the books and records of state agencies when those activities would duplicate or parallel the duties of the state auditor. See Attorney General Letter Opinion R–1404 (1948).

As discussed above, such independent authority never rested in the comptroller. Reliance by H–1063 (1977) on the doctrine of implied repealer was unnecessary. However, we reaffirm the conclusion of Attorney General Opinion H–1063 (1977) that the state comptroller of public accounts possesses no independent authority to duplicate or parallel the functions of the state auditor in initiating or conducting external, non-consensual audits and examinations of the books and records of state agencies.

### S U M M A R Y

The state comptroller of public accounts possesses no independent authority to duplicate or parallel the functions of the state auditor in initiating or conducting external, non-consensual audits and examinations of the books and records of state agencies, although he does possess such authority when acting at the direction of the governor.

Very truly yours,

MARK   WHITE
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

TED L. HARTLEY
Executive Assistant Attorney General

Prepared by Bruce Youngblood
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

C. Robert Heath, Chairman
Walter Davis
Susan Garrison
Rick Gilpin
Diane Van Helden
Bruce Youngblood