**Oscar Eduardo Martinez GARZA, Relator,**

v.

**Honorable Naomi HARNEY, Respondent.**

**No. 07–86–0012–CV.**

Court of Appeals of Texas, Amarillo.

Jan. 30, 1987.

Mark L. Mosley, Chambers & Mosley, Amarillo, for relator.

Jerry D. McLaughlin, Amarillo, for party in interest.

Before DODSON, COUNTISS and BOYD, JJ.

COUNTISS, Justice.

This is an original mandamus proceeding. Tex.R.Civ.Pro. 383; Tex. Gov't Code Ann. § 22.221 (Vernon Pamph.Supp.1986). Relator Oscar Eduardo Martinez Garza ("Garza") has petitioned this Court for a writ of mandamus directing respondent, The Honorable Naomi Harney, to rescind

temporary orders entered by her in a domestic controversy. We conditionally grant the writ in part and deny the writ in part.

Garza and the other real party in interest in this case, Shelley Elizabeth Taylor ("Taylor"), were husband and wife residing in Monterrey, N.L., Mexico. Two minor children, a son and a daughter, were born of the marriage. In early 1983, Garza and Taylor mutually petitioned the First Court of Family Affairs, First Judicial District of Monterrey, for a divorce and related relief. In August 1983, the court granted the divorce. The court also ordered the parties to abide by various mutual agreements concerning their property and children. Among other things, Taylor received what appears to be temporary custody of her children, but was ordered not to remove them from the Monterrey area. Garza was given extensive visitation rights. The Mexican court planned to enter final custodial orders after various psychological studies were completed.

In June 1985, while the custody matter was still pending in the Monterrey court,[1] Taylor moved with the children to Randall County, Texas. Garza then filed a petition in the 251st District Court of Randall County seeking to enforce the Mexico orders and compel the return of the children to Mexico. Taylor filed a counterclaim asking for a temporary injunction, and ultimately, modification of the Mexican decree.

Respondent granted the temporary injunction pending final orders, permitting the children to remain with Taylor in the United States and substantially limiting Garza's access to the children.

By this suit, Garza contends the district court in Randall County had neither the jurisdiction nor the power to enter a temporary order and alter the Mexican decree, that by doing so the district court abused its discretion and that we should by writ of mandamus correct that abuse by requiring the district court to rescind its temporary order and dismiss Taylor's counterclaim.

■ At the outset, we note that mandamus is an extraordinary remedy. *Callahan v. Giles,* 137 Tex. 571, 155 S.W.2d 793, 795 (1941). Its office is to execute, not to adjudicate; therefore, unless relator clearly shows a legal right to the performance by respondent of the duty sought to be enforced, *Wortham v. Walker,* 133 Tex. 255, 128 S.W.2d 1138, 1151 (1939), or a clear abuse of discretion, *Crane v. Tunks,* 160 Tex. 182, 328 S.W.2d 434, 440 (1959), the writ will not issue. This Court cannot entertain an application for writ of mandamus to resolve a fact question. *Rogers v. Lynn,* 121 Tex. 467, 49 S.W.2d 709, 714, *reh'g denied,* 121 Tex. 467, 51 S.W.2d 1113-14 (1932).

■ Garza seeks relief under the Uniform Child Custody Jurisdiction Act, Subchapter B of Title 2 of the Family Code, Tex.Fam.Code Ann. §§ 11.51-11.75 (Vernon 1986). The initial question is whether the Act applies to a proceeding in a foreign nation. By § 11.73, the "general policies" of the Act "extend to the international area." [2] Under that section, a decree of a similar court in another nation where basic due process was observed, is to be recognized and enforced by Texas courts. Tex. Fam.Code Ann. § 11.73 (Vernon 1986).

Under the record before us, the Mexican court functions like a Texas court handling domestic matters. Both Garza and Taylor appeared voluntarily before that court and it is obvious that the court observed basic due process. Thus, we hold the Act applicable to this case.

Garza contends that, under the Act, the district court had neither the jurisdiction nor the power to render the order in ques-

---

**1.** Mrs. Taylor testified by deposition that the custody issue had not been finally resolved and was still pending before the Mexican court.

**2.** § 11.73. International Application
    The general policies of this subchapter extend to the international area. The provisions of this subchapter relating to the recognition and en-
forcement of custody decrees of other states apply to custody decrees and decrees involving legal institutions similar in nature to custody institutions rendered by appropriate authorities of other nations if reasonable notice and opportunity to be heard were given to all affected persons.

tion. In order to analyze his contentions, we must review certain sections of the Act. Section 11.53, the jurisdictional section, permits a Texas court with general jurisdiction over custody matters to make a custody determination by initial decree or modification decree if one of four possible jurisdictional bases exists. Those four bases are commonly referred to as the (1) home state, (2) significant connection, (3) emergency, and (4) default bases.[3] Even if a jurisdictional base exists, the Texas court may not be able to determine or modify custody, however. For instance, section 11.56 says the Texas court may not exercise its jurisdiction if, at the time of filing the petition, a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this subchapter, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons. Additionally, under section 11.64(a), a Texas court may not modify the decree of a court of a sister state unless:

(1) it appears to the court of this state that the court that rendered the decree does not have jurisdiction under jurisdictional prerequisites substantially in accordance with this subchapter or has declined to assume jurisdiction to modify the decree; and

(2) the court of this state has jurisdiction.

■ Thus, the first substantive question is whether the trial court had jurisdiction of this case under § 11.53. The only jurisdictional ground mentioned in the trial court's temporary order,[4] or relied on by Taylor, is the third ground, the "emergency" ground. That ground is satisfied if (1) the child is physically present in Texas, and (2) has either been abandoned or "it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or there is a serious and immediate question concerning the welfare of the child...." Tex.Fam.Code Ann. § 11.53(a)(3)(B) (Vernon 1986).

But, says Garza, there is no evidence of either element of the ground. We will treat Garza's argument as a legal insufficiency contention and, applying the standard mandated by *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965), we will examine the record for any probative evidence to support the court's action, ignoring all contrary evidence.

---

**3.** As pertinent here, Section 11.53(a) states:

(a) A court of this state that is competent to decide child custody matters has jurisdiction to make a child custody determination by initial decree or modification decree or order if:

(1) this state:

(A) is the home state of the child on the date of the commencement of the proceeding; or

(B) had been the child's home state within six months before the date of the commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state;

(2) it appears that no other state would have jurisdiction under Subdivision (1) of Subsection (a) of this section and it is in the best interest of the child that a court of this state assume jurisdiction because:

(A) the child and his parents or the child and at least one contestant have a significant connection with this state other than mere physical presence in this state; and

(B) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

(3) the child is physically present in this state and:

(A) the child has been abandoned; or

(B) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or there is a serious and immediate question concerning the welfare of the child; or

(4) it is in the best interest of the child that this court assume jurisdiction and:

(A) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with Subdivision (1), (2), or (3) of this subsection; or

(B) another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child.

**4.** The trial court found that the custodial rights should be altered "for the safety and welfare of the children."

The first element, the physical presence of the children in Texas, was alleged by Garza in his pleadings and admitted by Taylor's counsel during the taking of Taylor's deposition.[5] That is sufficient to establish the element.

The second element, actual or threatened mistreatment, abuse, or neglect, or a serious, immediate question about the children's welfare, was the subject of considerable testimony by Taylor. In discussing Garza's relationship with their daughter, she testified that he had "many times pushed and shoved and battered my little girl and he was very often psychologically abusive to her." Taylor said the daughter would come home bruised, with marks on her arms and chest and would be frightened and crying and asking why her father did not love her. She also testified that her move to the United States was because of a culmination of those incidents.

When asked about her son, however, Taylor testified she was not alleging that Garza physically abused him. The evidence of physical abuse was centered on, and limited to, acts of violence by Garza toward his daughter, and also toward Taylor when they lived together.

As quoted above, under section 11.-53(a)(3)(B), the emergency order can be rendered upon evidence that the child "has been subjected to or threatened with mistreatment or abuse".... Certainly the evidence just discussed proves that fact and supports the district court's finding that emergency orders were needed to protect the daughter. Therefore, we conclude that both elements of the emergency base have been established for her and that the district court's finding concerning the daughter is supported by the evidence.[6] *See Marcrum v. Marcrum*, 181 N.J.Super. 361,

437 A.2d 725, 727–28 (App.Div.1981); *cf. Milner v. Kilgore*, 718 S.W.2d 759 (Tex. App.—Corpus Christi 1986, no writ) (trial court lacked jurisdiction where allegations of a serious and immediate question concerning the welfare of a child were filed after the jurisdictional hearing); *Soto-Ruphuy v. Yates*, 687 S.W.2d 19 (Tex.App.—San Antonio 1984, no writ) (allegation consisted of father's affidavit "based on hearsay upon hearsay" and record contained no evidence of physical or emotional harm requiring immediate action).

█ We cannot reach that same conclusion about the son, however. There is no evidence of any emergency concerning him and no indication, or contention, that he needs emergency protection. Thus, to that extent, the district court's finding has no evidentiary support. It follows that the court did not have jurisdiction to render a temporary order concerning the son.

█ Resolution of the jurisdictional question does not, however, resolve the case. Under sections 11.56 and 11.64, a Texas court may have jurisdiction of a custody dispute and still not have the power to act if a court of a sister state (or nation, under section 11.73) has jurisdiction of the matter. It is undisputed under this record that the proceeding contemplated by sections 11.56 and 11.64 is pending in a Mexican court. Thus, the final question is whether the Texas court should have taken action.

We initially note that a trial court has broad discretion in issuing orders for the immediate protection of a child. *McElreath v. Stewart*, 545 S.W.2d at 958; *Milner v. Kilgore*, 718 S.W.2d at 762. After carefully analyzing the few authorities pertinent to the facts before us, we have con-

---

5. Taylor's counsel said: "Let me be of some help to you, though. We will have no—you have got allegations of residence in Randall County for purposes of giving jurisdiction to this particular lawsuit and we will not quarrel with you or we will not challenge jurisdiction with you on that, counsel."

   We presume the trial court construed the statement as an admission of the element.

6. We observe that under section 11.53(a)(3)(B), there are two reasons for emergency orders: (1) if it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected, *or* (2) there is a serious and immediate question concerning the welfare of the child. Our decision is based on the first ground. For a construction of a ground similar to the second, *see McElreath v. Stewart*, 545 S.W.2d 955, 958 (Tex.1977).

cluded that the district court was empowered to act, but only on a *short term, temporary, emergency basis.* We do not construe the foregoing statutes to bar a court from making emergency orders to protect a child. Rather, we agree with, and adopt, the interpretation of the emergency grant of jurisdiction stated in *Hache v. Riley*, 186 N.J.Super. 119, 451 A.2d 971 (Ch.Div.1982). In that case, the New Jersey court pointed out that a court could exercise emergency jurisdiction under the Uniform Act whenever there was a potential for immediate harm. It emphasized, however, that exercise of the emergency jurisdiction "does not take on the same characteristic or implications as the exercise of jurisdiction under other provisions of the act." *Id.* 451 A.2d at 975. The court then held:

> Assumption of emergency jurisdiction is an assumption of temporary jurisdiction only; it is meant solely to prevent irreparable and immediate harm to children and, absent satisfaction of other UCCJA jurisdictional prerequisites, does not confer upon the state exercising emergency jurisdiction the authority to make a permanent custody disposition.

In reaching that conclusion, the court quoted Professor Bodenheimer:

> There are, of course, legitimate occasions for the exercise of emergency jurisdiction. However, this special power to take protective measures does not encompass jurisdiction to make a permanent custody determination or to modify the custody decree of a court with continuing jurisdiction. Emergency jurisdiction confers authority to make temporary orders, including temporary custody for a limited period of time, pending proceedings in the state with regular jurisdiction under the Act. [Bodenheimer, "Interstate Custody; Initial Jurisdiction and Continuing Jurisdiction under the UCCJA," XIV Fam.Law Q. No. 4 (Winter 1981); footnotes omitted.]

We reach the same conclusion here. The emergency involving the daughter permitted the district court to enter a temporary order for the daughter's protection until proper steps are taken in the original forum state to adequately protect the daughter. The district court cannot, however, take any other action that would change the orders of the Mexican court.

We assume that Judge Harney will vacate her order insofar as it touches the son and will vacate the order concerning the daughter when she is satisfied that steps have been taken by the Mexican court to adequately protect the daughter. The writ will issue only if she fails to do so.