IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-91-514-CV





PATRICIA ABDERHOLDEN,



 APPELLANT


vs.





TIMOTHY SCOTT MORIZOT,



 APPELLEE


 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT



NO. 433,038, HONORABLE F. SCOTT McCOWN, JUDGE PRESIDING



 





PER CURIAM

 This is a child-custody dispute. Pursuant to Texas Family Code § 11.53(a)(3)(B),
the district court issued an order modifying the child's managing conservatorship. This appeal
requires us to address the apparent conflict between section 11.53(a)(3)(B) and Texas Family Code
§ 11.53(d) and determine whether the trial court had authority to render an order permanently
modifying custody. We will reverse. 



BACKGROUND


1. Factual Background

 Appellee Timothy Scott Morizot (Morizot) and appellant Patricia Abderholden
(Abderholden) were divorced on August 8, 1988, in the district court of Travis County. 
Abderholden was appointed managing conservator of their son, Alan David Morizot (Alan), then
almost four years old. Morizot was appointed possessory conservator. Abderholden and Alan
lived in Marshall, Arkansas, at the time of the divorce and have continued to reside there. 
Morizot resides in Travis County.

 In the summer of 1989, Morizot became concerned about Alan's behavior during
his six-week visit in Texas. Morizot took Alan to Charter Lane Hospital for a psychological
evaluation. Dr. Byram Barnes, the evaluating psychologist, diagnosed Alan as suffering from a
post-traumatic stress disorder. Dr. Barnes sent his report to the Department of Human Services
in Arkansas. Morizot returned Alan to Abderholden at the end of the visitation period and did
not see him again until the next scheduled visit in Arkansas at Christmas.

 Morizot was again concerned about Alan during his Christmas visit. On December
29th, Morizot took Alan to the Ozark Counseling Services for an emergency interview. The next
day, Morizot decided to take Alan to Texas. Once in Texas, Morizot telephoned Abderholden
to tell her Alan's whereabouts. On January 2nd, Morizot contacted an attorney who prepared a
motion to modify custody and request for a temporary restraining order (TRO) to prevent
Abderholden from recovering Alan. Morizot also went to Charter Lane hospital in an attempt to
have Dr. Byram Barnes see Alan. On January 3, 1990, Morizot was arrested in Austin on
charges of interference with child custody. Abderholden drove to Austin to recover Alan and
upon her arrival, learned that a hearing on Morizot's petition for a TRO was scheduled the next
day in the Travis County district court. 



2. Procedural Background

 At the TRO (1) hearing on January 4th, Morizot sought authority to place Alan into
in-patient treatment at Charter Lane Hospital and Abderholden voluntarily agreed to admit Alan
to the hospital and to participate in the treatment process. The trial court announced from the
bench that it would issue an injunction placing Alan in a parental institute and restricting both
parents from removing him until a doctor released him. The record, however, does not include
a signed order granting the request for injunctive relief.

 On January 9, 1990, Morizot filed a "Motion To Modify In Suit Affecting The
Parent-Child Relationship And Motion For Immediate Temporary Orders" ("the motion to
modify"). In the motion to modify, Morizot prayed for a temporary restraining order, temporary
and permanent orders removing Abderholden as Alan's managing conservator and appointing
Morizot managing conservator, and changes in support and visitation.

 On February 8, 1990, Abderholden filed a plea to the jurisdiction, original answer,
and application for writ of habeas corpus. On February 27th and 28th, a hearing was held on
Abderholden's plea and application, and on Morizot's motion for psychological evaluation. 

 In an order signed March 2, 1990, the trial court denied Abderholden's application
for writ of habeas corpus. The court found that "there is a serious, immediate question
concerning the welfare of the child sufficient to allow the Court to take jurisdiction over this child
pursuant to § 11.53 and to make appropriate temporary orders regarding the child pursuant to §
14.10(d) of the Texas Family Code." (Emphasis added.) The order further recites that "[t]he
Court is not ruling on whether it will assume jurisdiction to determine custody at this time." The
court ordered Alan placed in Charter Lane Hospital under the care of Dr. Byram Barnes, and gave
Morizot temporary exclusive possession of Alan after his release from the hospital except as
recommended by the treating professionals, pending further orders of the court. Child support
and visitation were temporarily modified.

 Approximately thirteen months later, on April 24, and May 8, 1991, the trial court
held a hearing on Morizot's motion to modify. On April 29, 1991, the trial court signed an order
determining jurisdiction, "over this child over [sic] the parties in [sic] the subject matter of this
suit." The district court assumed exclusive jurisdiction over "this matter."

Thereafter, on July 26, 1991, pursuant to the master's recommendation, the trial court signed an
order naming Morizot sole managing conservator. Abderholden appeals from the July 26th order.

 Abderholden brings two points of error on appeal. In the first she alleges that the
trial court did not have subject-matter jurisdiction to modify the prior custody order to appoint
Morizot as Alan's sole managing conservator. We will sustain Abderholden's first point of error
and reverse on that basis. In the second, she alleges there is insufficient evidence that a serious
and immediate question existed concerning Alan's welfare. Even assuming that the evidence is
sufficient to sustain the trial court's finding, it lacked authority to render an order permanently
modifying custody. Accordingly, we need not decide Abderholden's second point of error.



DISCUSSION


 The trial court's July 26th order recites two bases for the trial court's exercise of
subject-matter jurisdiction over Morizot's motion to modify:


 

The Court, after receiving the evidence, finds that it has jurisdiction over this
cause of action and the parties, as a result of prior proceedings. Further, the Court
finds that jurisdiction is proper in Texas pursuant to the provisions of Section
11.53 (a)(3)(B) of the Texas Family Code.



1. Jurisdiction Not Conferred By Prior Proceedings

 A party may waive a complaint challenging the trial court's assertion of in
personam jurisdiction by voluntary participation in the trial of the suit. By contrast, subject-matter jurisdiction is a fundamental stricture on the power of the court and a person's voluntary
participation in the trial cannot confer subject-matter jurisdiction where it does not otherwise exist. 
See Bullock v. Bridges, 623 S.W.2d 508, 511 (Tex. App.--Austin 1981, writ ref'd n.r.e.), cert.
denied, 457 U.S. 1135 (1982). Abderholden's prior participation in, or the mere existence of,
prior proceedings, therefore, cannot form the basis for the trial court's assertion of subject-matter
jurisdiction over the motion to modify. Furthermore, a custody determination is a status
adjudication that is not dependent on personal jurisdiction over the parents. Henry v. Rivera, 783
S.W.2d 766, 769 n.2 (Tex. App.--San Antonio 1990, orig. proceeding). Whether the district court
acquired personal jurisdiction over Abderholden does not decide the issue. Subject-matter
jurisdiction is determined by reference to the Uniform Child Custody Jurisdiction Act, Tex. Fam.
Code Ann. § 11.51 et seq. (West 1986 & Supp. 1992) (UCCJA). See Id.

2. Subject-Matter Jurisdiction Based on § 11.53(a)(3)(B)

 Abderholden next challenges the trial court's exercise of jurisdiction based on
§ 11.53(a)(3)(B), which provides in part:



(a) A court of this state that is competent to decide child custody matters has
jurisdiction to make a child custody determination (2) by initial decree or
modification decree or order if: 


(3) the child is physically present in this state and: 


 . . . .


(B) it is necessary in an emergency to protect the child because he has been
subject to or threatened with mistreatment or abuse or is otherwise neglected
or there is a serious and immediate question concerning the welfare of the
child.



Tex. Fam. Code Ann. § 11.53(a)(3)(B) (West 1986). 

 Abderholden argues that § 11.53(d) completely withdraws from the trial court
subject-matter jurisdiction to modify custody.

 Section 11.53(d) provides:



Except on written agreement of all the parties, a court may not exercise its
continuing jurisdiction to modify custody (3) if the child and the party with custody
have established another home state (4) unless the action to modify was filed before
the new home state was acquired.



Tex. Fam. Code Ann. § 11.53(d) (West 1986).

 The record reflects that Arkansas was Alan's home state at the time this proceeding
to modify custody was initiated. Further, the record reflects that Abderholden did not agree in
writing to the Texas court's exercise of jurisdiction over the motion to modify custody. (5) 
Abderholden cites Huffstutlar v. Koons, 789 S.W.2d 707, 713 (Tex. App.--Dallas 1990, orig.
proceeding) as support for her argument that § 11.53(d) withdraws any jurisdictional power
conferred by § 11.53(a)(3)(B) in this cause. 

 Morizot counters that § 11.53(d) is conditional, that it prevents a Texas district
court from exercising continuing jurisdiction to make an order modifying managing
conservatorship of the child unless a provision of § 11.53(a)(3)(B) applies, citing Soto-Ruphuy v.
Yates, 687 S.W.2d 19, 21 (Tex. App.--San Antonio 1984, orig. proceeding) (emphasis added). 
See also Caplan v. Daggett, 784 S.W.2d 146, 147 (Tex. App.--Houston [14th Dist.] 1990, orig.
proceeding).



a. Section 11.53(d) Does Not "Withdraw" Jurisdiction When § 11.53(a)(3)(B) Applies

 i. Section 11.53(d) Limits Continuing Jurisdiction Only

 Section 11.53(d) relates to the court's continuing jurisdiction. Pursuant to the Tex.
Fam. Code Ann. § 11.05 (West 1986 & Supp. 1992), a court retains "continuing, exclusive
jurisdiction of all parties and matters provided for . . . in connection with the child." Section
11.05(g) confers this continuing jurisdiction on all aspects of the decree, subject only to the
restraint of § 11.53(d) which deprives the original court of continuing jurisdiction to modify
custody once the custodian and child establish a new home state.



 ii. Section 11.53(a) Establishes Jurisdiction Independent Of Continuing Jurisdiction

 Section 11.53(a), on the other hand, refers to the establishment of jurisdiction 
independent of continuing jurisdiction. Pursuant to § 11.53(a), "[a] court of this state that is
competent to decide child custody matters has jurisdiction to make a child custody determination
by decree or modification decree or order if" one of the four bases set forth in subparagraph (a)
are met. Tex. Fam. Code Ann. § 11.53(a) (West 1986). 

 Huffstutlar does not hold to the contrary. In Huffstutlar, the trial court asserted
jurisdiction to modify custody based on § 11.53(a) after finding that Texas was the child's home
state. However, the court of appeals concluded that Oklahoma was the child's home state. The
only remaining basis for the court's exercise of jurisdiction was its continuing jurisdiction under
§ 11.05(g), as the court having rendered the original decree. Under these facts, § 11.53(d)
prohibited the trial court from exercising its continuing jurisdiction.

 Here, the Travis County district court may not exercise its continuing jurisdiction
under § 11.05(g) because of the restraints of § 11.53(d). (6) However, this does not prevent the trial
court from acting pursuant to § 11.53(a)(3)(B). We turn now to the scope of the trial court's
power to act under § 11.53(a)(3)(B).



 b. Section 11.53(a)(3)(B) Confers Limited Emergency Jurisdiction

 In the alternative, Abderholden argues that § 11.53(a)(3)(B) vests the court with
emergency jurisdiction to modify custody temporarily but does not confer jurisdiction to modify
custody permanently. See Garza v. Harney, 726 S.W.2d 198 (Tex. App.--Amarillo 1987, orig.
proceeding). We agree. 

 By its terms, § 11.53(a)(3)(B) confers jurisdiction only in an emergency. 
Generally, emergency jurisdiction confers only temporary jurisdiction to prevent irreparable and
immediate harm to children. Absent satisfaction of other UCCJA jurisdictional prerequisites, §
11.53(a)(3)(B) does not confer upon the state exercising emergency jurisdiction the authority to
make a permanent custody disposition. Garza, 726 S.W.2d at 202-03 (emphasis added) (adopting
this interpretation of emergency jurisdiction). The Garza court relied on language in Hachne v.
Riley, 451 A.2d 971 (N.J. Ch. Div. 1982). The Hachne court, in limiting a court's exercise of
its emergency jurisdiction, cited Brigitte M. Bodenheimer, Interstate Custody; Initial Jurisdiction
and Continuing Jurisdiction Under the UCCJA, XIV Fam. Law Q. No. 4 (Winter 1981): 
"Emergency jurisdiction confers authority to make temporary orders, including temporary custody
for a limited period of time, pending proceedings in the state with regular jurisdiction under the
Act." Hachne, 451 A.2d at 975. 

 In Garza, an emergency existed as to one of two children located in Texas who
were the subject of a motion to modify custody under § 11.53(a)(3)(B). The Garza court
concluded that despite the existence of a cause pending elsewhere, as to the child for whom an
emergency existed, the emergency permitted the district court to render a temporary order for her
protection until proper steps could be taken in the original forum to protect the child adequately. (7) 
Garza, 726 S.W.2d at 203. 

 Limiting emergency jurisdiction under § 11.53(a)(3)(B) to issuance of appropriate
temporary orders is consistent with other provisions of the Family Code and promotes the
purposes of the Act. See Tex. Fam. Code Ann. § 14.10(d) (West Supp. 1992) (trial courts may
make appropriate temporary orders when there is a serious and immediate question concerning
the welfare of the child); Tex. Fam. Code Ann. § 11.51(a)(3) (West 1986). This interpretation
of § 11.53(a)(3)(B) and (d) gives effect to both provisions, and yields a reasonable result. Code
Construction Act, Tex. Gov't Code Ann. § 311.021(2), (3), .023(5) (West 1988).

 We conclude that § 11.53(a)(3)(B) confers emergency jurisdiction to issue
appropriate temporary orders only. Therefore, the trial court exceeded its authority when it made
a permanent modification order appointing Morizot managing conservator. Accordingly, we
sustain Abderholden's first point of error.



 c.  Morizot Argues the Trial Court Has Jurisdiction to Modify Custody Under     § 11.53(a)(4)(B).

 Morizot argues that the trial court has jurisdiction to decide the custody issue under 
§ 11.53(a)(4)(B), because the Arkansas trial court declined to exercise jurisdiction over the matter. 
Section 11.53(a)(4)(B) provides that a trial court of this state has jurisdiction to make a child
custody determination if it is in the best interest of the child that the court assume jurisdiction and
another state has declined to exercise jurisdiction on the ground that this state is the more
appropriate forum to determine the custody of the child. Tex. Fam. Code Ann. § 11.53(a)(4)(B)
(West 1986).

 There are three references to the Arkansas court in the record. Two of the
references are found in two letters from the trial court to counsel for the parties. The first, dated
May 30, 1990, recites that the trial court:



spoke with Judge McNeil of Arkansas pursuant to the provisions of the Uniform
Child Custody Jurisdiction Act regarding this case. We decided that this court
would continue to exercise its limited jurisdiction for the limited purpose of
handling further proceedings concerning the serious immediate question of the
welfare of the child.


(Emphasis added.) The second letter, dated November 26, 1990, recites, in pertinent part:



After further discussion with Judge McNeil of Arkansas, we have agreed and
decided that the Texas Courts should undertake jurisdiction of this case.



(Emphasis added.) Thereafter, on April 29, 1991, the trial court signed an "Order Determining 

Jurisdiction," which recites, in pertinent part:



Having considered the evidence, pleadings and argument of counsel, and after
having consulted with Judge Andre McNeil in the child's home state, the Court
finds that facts and circumstances sufficient to confer jurisdiction over this child
over the parties in the subject matter of this suit exist.



(Emphasis added.) 

 The case of In the Interest of Wilson, 799 S.W.2d 773 (Tex. App.--Tyler 1990,
orig. proceeding) is instructive in our determination of whether § 11.53(a)(4)(B) may form the
basis for jurisdiction in this cause. (8) The Wilson court concluded that a Texas court did not have
jurisdiction of custody under § 11.53(a)(4)(B) because Oklahoma was the child's home state and
the Oklahoma court did not "decline to exercise jurisdiction" in the manner required by
Oklahoma's and Texas' versions of the UCCJA. The provisions of the Oklahoma statute cited
in Wilson and the provisions of the Arkansas statute (9) applicable in this cause are identical. There,
as here, the trial judge contacted the home-state judge by telephone, whereupon the home-state
judge, with no custody proceeding pending in his court, agreed with the trial judge to yield the
home state's jurisdiction to the State of Texas. In Wilson, the home-state judge dictated an order
and made findings.

 The Wilson court said about the procedure used to decline jurisdiction:



It is apparent that the so-called findings made by the Oklahoma judge were based
solely on his telephone conversations with the trial judge to which neither appellant
nor appellee was privy. In short, the order of declination of jurisdiction over the
dispute by the Oklahoma court judge and his "findings" amount to nothing more
than an agreement between judges, unsupported by any real evidence submitted
during the course of a custody proceeding in the Oklahoma court. Additionally,
the trial judge's actions in modifying the Oklahoma decree, based on the Oklahoma
"order", violated the plain language of section 11.54 that "reasonable notice and
opportunity to be heard must be given to the contestants . . .[,]" as well as state
and federal due process rights.



Wilson, 799 S.W.2d at 775. The Wilson court held void the Oklahoma court "order" declining
to exercise jurisdiction.

 As a preliminary matter, we note that in his motion to modify, Morizot did not
plead jurisdiction based on § 11.53(a)(4)(B). Nor does the July 26th order appealed from cite §
11.53(a)(4)(B) as a basis for jurisdiction. The only order referring to the Arkansas court is the
Texas district court order of April 29, 1991. That order does not recite that the Arkansas court
declined to exercise jurisdiction, only that the Texas trial court, "having considered the evidence,
pleadings and argument of counsel and having consulted with" the Arkansas judge, "finds that
facts and circumstances sufficient to confer jurisdiction over this child over the parties in the
subject matter of this suit exist." The trial court then asserted "exclusive jurisdiction over this
matter."

 Second, even if the April 29th order is construed as reciting that the Arkansas court
agreed to decline to exercise jurisdiction, the record on appeal does not contain findings, or an
order, from the Arkansas court. There is no evidence to indicate that the Arkansas court held a
hearing on the question of jurisdiction. At best, the record indicates an agreement between
judges, which is not sufficient. See Wilson, 799 S.W.2d at 775. As in Wilson, the parties here
were not provided with an opportunity to be heard on the issue of whether the Arkansas trial court
should decline to exercise its jurisdiction, nor is there any record that the Arkansas court
considered the statutory factors it is required to consider in making such a determination. Finally,
under Texas law, any communication from another state informing this state of a finding of
inconvenient forum because a court of this state is the more appropriate forum must be filed in
the custody registry of the appropriate court. Tex. Fam. Code Ann. § 11.57(i) (West 1986); see
also Tex. Fam. Code Ann. § 11.66(3) (West 1986). No record of such a communication is before
us. We conclude that the Arkansas court did not properly decline to exercise jurisdiction under
both the Texas and Arkansas versions of the UCCJA.



CONCLUSION


 The trial court has emergency jurisdiction over the subject matter of this suit under
§ 11.53(a)(3)(B) which confers authority to render only temporary orders. No other provision
of § 11.53(a) empowers the trial court to act further. Accordingly, the trial court exceeded its
authority when it permanently modified custody by appointing Morizot sole managing
conservator. Appellant's first point of error is sustained.

 The trial court's order modifying custody is reversed. The cause is remanded to
the trial court with instructions that the portion of Morizot's "Motion to Modify In Suit Affecting
the Parent-Child Relationship and Motion For Temporary Orders" seeking permanent orders
modifying the managing conservatorship be dismissed for want of subject-matter jurisdiction and 
for any further proceedings consistent with this opinion.



[Before Justices Powers, Aboussie and B. A. Smith]

Reversed and Remanded with Instructions

Filed: June 30, 1993

[Publish]
1. [1] A copy of the petition for a temporary restraining order is not included in the record. At the
hearing before Judge Meurer, Morizot's attorney requested a temporary injunction.
2. [2] A "custody determination" means a court decision and court orders and instructions
providing for the custody of a child, including visitation rights, but does not include a decision
relating to child support or any other monetary obligation of any person. Tex. Fam. Code Ann.
§ 11.52(2) (West 1986).
3. [3] "Custody" means managing conservatorship of a child. Tex. Fam. Code Ann. § 11.52(10)
(West 1986).
4. [4] "Home state" means the state in which the child immediately preceding the time involved
lived with his parents, a parent, or a person acting as parent, for at least six consecutive months,
and in the case of a child less than six months old, the state in which the child lived from birth
with any of the persons mentioned. Periods of temporary absence of any of the named persons
are counted as part of the six-month or other period. Tex. Fam. Code Ann. § 11.52(5) (West
1986).
5. [5]Appellee argues that Patricia's voluntarily participation in the January 4th proceedings
constitutes a written agreement to the trial court's jurisdiction over the custody matter. There is
no merit to this argument. Patricia's verbal acquiescence in having Alan admitted to Charter Lane
hospital on a temporary basis simply is not an "agreement in writing."
6. [6] Therefore, to the extent the July 26th order referring to jurisdiction based on Patricia's
participation in "prior proceedings" refers to the trial court's continuing jurisdiction to act to
modify its decree, § 11.53(d) withdraws such jurisdiction.
7. [7] There being no emergency as to the second child, the trial court was without jurisdiction to
enter a temporary order as to him. Garza, 726 S.W.2d at 202.
8. [8]  In Wilson, as here, the Texas court denied appellant's petition for writ of habeas corpus,
overruled appellant's plea to the jurisdiction, and granted appellee's motion to modify.
9. [9] Pursuant to Tex. R. Civ. Evid. 202, we judicially note Arkansas Code Ann. § 9-13-207,
221 (Michie 1991).