163 S.W.3d 191 (2005)
In the Interest of M.G.M. and V.A.M.
No. 09-03-528 CV.
Court of Appeals of Texas, Beaumont.
Submitted January 25, 2005.
Decided March 31, 2005.
*193 Robert Rosenquist, Darden, Fowler and Creighton, Conroe, for appellant.
Ruth Lavada Vernier, The Woodlands, for appellee.
Before McKEITHEN, C.J., GAULTNEY and HORTON, JJ.

OPINION
STEVE McKEITHEN, Chief Justice.
Matthew Jason Markle ("Matthew") appeals a protective order issued by the trial court on July 30, 2003. The applicant for this protective order was his wife, Corinne Templin Markle ("Corinne"). Corinne's application was filed on June 4, 2003. In support of her application, Corinne attached an affidavit indicating that she and Matthew were married on August 30, 1996, in Kalamazoo, Michigan, and that she and Matthew were the parents of two children, M.G.M. and V.A.M. Corrine's affidavit also stated that as of the June 4, 2003, filing date, she and the two children had lived in *194 Texas only since April 25, 2003, which works out to approximately forty days. Prior to April 25, 2003, Matthew, Corinne, and the two children had been residing in Decatur, Michigan. It also appears that Corinne and Matthew had been residing in Michigan prior to their marriage in August of 1996, and that the family had not resided outside of Michigan until Corinne came to Texas with the children on April 25, 2003.
The record further indicates that a temporary ex parte protective order was issued on June 4, 2003, and was to remain in effect for only twenty days. However, prior to Corinne's protective order application, on May 28, 2003, Matthew initiated divorce and child custody proceedings in the 36th Judicial Circuit, Van Buren County, Michigan. While it is not apparent that Corinne was aware of the divorce and custody proceedings pending in Michigan at the time she first applied for the protective order on June 4, 2003, the record does reflect that on June 24, 2003, counsel for Matthew filed with the Texas trial court pleadings in the nature of a Special Appearance, Plea in Abatement, and Motion to Transfer Protective Order. Within his pleadings, Matthew informed the trial court of the pending divorce and custody proceeding in Michigan. The pleadings further contend that, pursuant to Tex. Fam.Code Ann. § 152.201 (Vernon 2002), the Texas trial court lacked subject-matter jurisdiction over the protective order action because Texas was not the home state of the children.
The record also indicates that on June 24, 2003, the trial court entered an order extending its temporary ex parte protective order with the agreement of Matthew's trial counsel. Explicitly included within this June 24, 2003, temporary order is language recognizing that Matthew's agreement to extend the temporary order was "subject and without prejudicing or waiving any plea to the jurisdiction or special appearance of the Respondent." The extended temporary protective order noticed July 10, 2003, as the new date for the hearing "to determine whether the Court should issue its protective order."
On July 10, 2003, a brief, non-evidentiary hearing was held of which we have a reporter's record. The trial court, again with the agreement of Matthew's trial counsel, extended the temporary ex parte protective order because of scheduling problems that prevented the trial court from taking evidence at that time. The trial court agreed to permit Matthew's trial counsel to present his special appearance motion whenever the hearing reconvened. As it turned out, the hearing reconvened the next day, July 11, 2003. However, instead of permitting Matthew to testify and present his special appearance motion, the trial court began the hearing by ruling that Matthew's agreeing to the extension of the temporary protective order on June 24, 2003, constituted a general appearance. Matthew's trial counsel attempted to remind the trial court that he expressly reserved the special appearance issue with the trial court's permission. The trial court would not reconsider and found the special appearance motion to have been waived.
At the July 11, 2003, evidentiary hearing, the trial court heard from Corinne and from Matthew as well as from a psychologist who evaluated Corinne prior to the hearing. At the conclusion of the testimony, the trial court recessed the hearing until it could interview M.G.M. and V.A.M. The trial court also extended the temporary ex parte protective order for an additional twenty days. Thereafter, on July 30, 2003, the trial cort interviewed M.G.M. and V.A.M. in chambers. Upon concluding the interviews with the children, the trial *195 court ruled in open court that family violence had occurred and that family violence would likely occur in the future. The trial court then stated: "I am making it a final order today." The written protective order was subsequently signed by the trial court that same day.
On appeal, both Matthew and Corinne raise jurisdictional issues, with Matthew contending the trial court lacked both personal and subject-matter jurisdiction to issue the July 30, 2003, protective order, and Corinne arguing that this Court lacks jurisdiction to entertain the appeal as the July 30, 2003, protective order is an interlocutory order and, therefore, not appealable. Jurisdiction is fundamental; and we must determine whether we have jurisdiction over an appeal, regardless of whether the parties raise the issue. See Dallas County Appraisal Dist. v. Funds Recovery, Inc., 887 S.W.2d 465, 468 (Tex.App.-Dallas 1994, writ denied). Lack of subject-matter jurisdiction by a trial court is fundamental error and may be raised for the first time on appeal. Id. To properly address the jurisdictional issues we must first determine under what authority the protective order was issued in light of the facts and circumstances present in the record.
From various comments made by the trial court, especially during the brief hearing conducted on July 10, 2003, it appears the trial court based the issuance of the July 30, 2003, protective order on the provisions contained in Title 4 of the Texas Family Code. See Tex. Fam.Code Ann. §§ 71.001-92.001 (Vernon 2002 & Supp.2005). Matthew's counsel, on the other hand, vigorously argued that the provisions of Chapter 152 of the Texas Family Code controlled as both Corinne's application for protective order and all of the protective orders entered by the court made a "child custody determination" as that term is defined under Chapter 152. See Tex. Fam.Code Ann. § 152.102(3) & (4) (Vernon 2002).[1] Significant, however, is the language contained in section 152.002 which reads: "If a provision of this chapter conflicts with a provision of this title or another statute or rule of this state and the conflict cannot be reconciled, this chapter prevails." Tex. Fam.Code Ann. § 152.002 (Vernon 2002). As applied to the facts and circumstances of this case, we believe that the provisions of Title 4 have more of a general application to all of the issues before the trial court while Chapter 152 has more specialized and comprehensive application to those same issues. The Code Construction Act states that if a general provision conflicts with a special or local provision, the provisions "shall be construed, if possible, so that effect is given to both." Tex. Gov't Code Ann. § 311.026(a) (Vernon 1998). We will therefore examine the jurisdictional issues by giving effect to both Title 4 and Chapter 152 in the context of the particular facts of this case.
On the face of Corinne's June 4, 2003, application for protective order, she references section 152.209(a) of the Texas Family Code in the apparent belief that compliance *196 with that provision was somewhat of a prerequisite for filing the application. See Tex. Fam.Code Ann. § 152.209(a) (Vernon Supp.2005). Furthermore, an examination of Corinne's affidavit that was filed in support of her application for protective order clearly indicated that Corinne and the children had only been "residing" in Texas for approximately forty days prior to the filing of the application. Added to the fact that Corinne's application explicitly requested inter alia that the trial court prohibit Matthew from removing the children from Corinne's possession, and that the trial court grant Corinne exclusive possession of the children and specify the terms of Matthew's access to the children, Corinne's application essentially required the trial court to conduct a "child custody proceeding," and make a "child custody determination" involving children whose "home state"[2] was clearly Michigan, not Texas. The fact that the main focus at the time the application was filed was protection for the applicant and the children from family violence could not allow the trial court to apply Title 4 exclusively and to the exclusion of the procedures set out in Chapter 152. An examination of the facts and circumstances in the instant case indicates that the necessary protections available to family violence victims in Title 4 and the purposes for Chapter 152, also known as the Uniform Child Custody Jurisdiction and Enforcement Act, could have been given full effect had the trial court attempted to do so. And, as noted above, the provisions of Chapter 152 prevail if an irreconcilable conflict arises between it and another statute or rule of the state. Tex. Fam.Code Ann. § 152.002 (Vernon 2002).
At the outset, we note that many of the operative provisions in Chapter 152 require a jurisdictional determination be made by the trial court before making a child custody determination. See Tex. Fam.Code Ann. §§ 152.201-152.204; 152.206-152.208; 152.304 (Vernon 2002). The doctrine that Texas district courts are courts of general jurisdiction and, therefore, are presumed to have subject-matter jurisdiction is not applicable to actions contemplated under Chapter 152 as the legislature has provided that some of those actions must be heard elsewhere. See Dubai Petroleum Co. v. Kazi, 12 S.W.3d 71, 75 (Tex.2000). Under Chapter 152, in order for a Texas trial court to make an initial child custody determination, one of the four sub-parts of section 152.201(a) must be met. See Tex. Fam.Code Ann. 152.201(a) (Vernon 2002); In re Barnes, 127 S.W.3d 843, 846-47 (Tex.App.-San Antonio 2003, orig. proceeding); In re Brilliant, 86 S.W.3d 680, 685 (Tex.App.-El Paso 2002, no pet.). Chapter 152 prioritizes the child's "home state" for jurisdictional purposes. See Barnes, 127 S.W.3d at 847; In re Oates, 104 S.W.3d 571, 576 (Tex.App-El Paso 2003, orig. proceeding). In short, a Texas court may make an initial child custody determination only if Texas "is the home state of the child on the date of the commencement of the proceeding,..." See Tex. Fam.Code Ann. §§ 152.201(a)(1), 152.102(7), 152.102(5) (Vernon 2002); Oates, 104 S.W.3d at 577.
The facts in the instant case indicate that M.G.M. and V.A.M. had lived in Texas with Corinne for only about forty days. Prior to that, Michigan was the state in which the children lived for at least six consecutive months before Corinne filed her application on June 4, 2003. Clearly, Texas was not the children's home state so as to confer jurisdiction on the *197 trial court to enter a child custody determination under section 152.201(a). However, there is an exception to the rule of "home state" jurisdiction under section 152.201(a) that permits a Texas court to exercise "temporary emergency jurisdiction" if the child is present in Texas and "the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse." See Tex. Fam.Code Ann. § 152.204(a) (Vernon 2002). "A trial court enjoys broad discretion in issuing orders for immediate protection of a child." Saavedra v. Schmidt, 96 S.W.3d 533, 544 (Tex.App.-Austin 2002, no pet.) (citing Garza v. Harney, 726 S.W.2d 198, 202 (Tex.App.-Amarillo 1987, orig. proceeding)). "States have a parens patriae duty to children within their borders, and the possibility that allegations of immediate harm might be true is sufficient for a court to assume temporary emergency jurisdiction in the best interests of the child under the UCCJEA." Id. at 544. Even the duty of states to recognize and enforce a custody determination of another state must yield if circumstances require temporary emergency orders to protect the child. Id.
However, any order issued under emergency circumstances must be temporary in nature, and the order must specify a period that the court considers adequate to obtain an order from the state with jurisdiction. See Tex. Fam.Code Ann. § 152.204(c) (Vernon 2002); Saavedra, 96 S.W.3d at 544. The temporary order shall remain in effect only until proper steps are taken in the original forum state to adequately protect the child or until the specified period expires. See Tex. Fam.Code Ann. § 152.204(c) (Vernon 2002); Saavedra, 96 S.W.3d at 545. Furthermore, under the explicit terms of section 152.204(d), once a Texas court has been requested to make a child custody determination under section 152.204, upon being informed that a child custody proceeding has been commenced in a state having jurisdiction under section 152.201, the Texas court "shall immediately communicate with the other court." Tex. Fam.Code Ann. § 152.204(d) (Vernon 2002) (emphasis added). Such inter-court communications are subject to the requirements set out under section 152.110 of the Texas Family Code. See Tex. Fam.Code Ann. § 152.110 (Vernon 2002). While the instant record is not clear at what point between June 4, 2003, and June 24, 2003, the trial court was aware of the pending divorce proceeding in Michigan, the record is clear that the court was made aware of that fact on June 24, 2003, with the filing of Matthew's pleadings. At that point, the trial court was required to communicate with the court in Van Buren County, Michigan, to ensure the safety of Corinne and the children by requesting, for example, that similar protective orders be made a part of the pending Michigan court's divorce proceeding.
In light of the above, the trial court certainly had temporary emergency jurisdiction under section 152.204(a) to issue the ex parte temporary protective orders for the protection of Corinne and the children. To accomplish this, the trial court had the authority to utilize the provisions in Title 4, specifically Chapter 85. Under the provisions of Tex. Fam.Code Ann. § 85.001(b)(1) (Vernon 2002), if the trial court finds that family violence has occurred and further finds that family violence is likely to occur in the future, the court "shall render a protective order as provided by Section 85.022 applying only to a person found to have committed family violence[.]" Section 85.022 consists of two major parts. See Tex. Fam.Code Ann. § 85.022 (Vernon 2002). Section 85.022(a) contains a list of certain remedial *198 and therapeutic measures a trial court may order the person who has committed family violence to undertake and complete: (complete a battering intervention and prevention program; counsel with a social worker, psychologist, family service agency, etc...; or perform acts specified by the court that are determined necessary or appropriate to prevent or reduce the likelihood of family violence). Section 85.022(b) contains a list of prohibited conduct that usually appears in all protective orders for the protection of family violence, such as prohibiting the batterer from committing family violence; from communicating either directly or indirectly with the person protected in a threatening manner; from going to or near the residence, place of employment, business, school, or child-care facility of the person protected by the order; from engaging in any type of stalking, harassing, alarming, embarrassing, or abusive conduct directed at the person protected by the order; and from possessing a firearm unless the batterer is a licensed peace officer who is on-duty.
Section 85.001(b)(2) provides that the trial court "may" render a protective order as provided by Section 85.021, and make its provisions applicable to either the person found to have committed family violence or to the person protected by the order. See Tex. Fam.Code Ann. § 85.021 (Vernon 2002). The provisions listed under section 85.021 are somewhat atypical of provisions contained in temporary emergency protective orders as the list includes, (1) prohibiting the removal of a child who is a member of the family from the possession of a person named in the order or from the jurisdiction of the court, and prohibiting the transfer or disposal of property that is mutually owned or leased by "the parties;" (2) granting exclusive possession of a residence to a party and, if appropriate, directing one or more parties to vacate the residence if the residence is jointly owned or leased or owned or leased by one or both of the parties; providing for possession of and access to a child of a party if the person receiving possession of or access to the child is a parent of the child; requiring the payment of support for a party or for a child of a party if the person ordered to pay has an obligation to support the other party or child; or awarding to a party the use and possession of specified property that is community property or jointly owned or leased.
The record before us indicates that the trial court's July 30, 2003, protective order contains provisions from both section 85.021 and section 85.022. Not only does the order contain the standard prohibitions under section 85.022(b) reasonably necessary for the protection of Corinne and the children, the order also (1) requires Matthew to pay child support of "$199.69" per month, (2) requires Matthew to complete a "battering intervention and prevention program as provided by article 42.141 of the Texas Code of Criminal Procedure," and (3) prohibits Matthew from "transferring, encumbering, or otherwise disposing of property mutually owned or leased by the parties, except when in the ordinary course of business." Under the facts and circumstance of this case, these latter requirements and prohibitions were outside the trial court's authority to impose on Matthew based upon the scope of its temporary emergency jurisdiction. Absent evidence that the latter three burdens placed on Matthew related to emergency protection for the child, parent, or sibling of the child, these were matters that were best left for the Michigan court to decide in the course of disposing of the divorce proceeding.
Under the facts and circumstances in the record, the proper course open to the trial court was to have exercised temporary *199 emergency jurisdiction under section 152.204(a) and issued the temporary ex parte protective order which could include all of the provisions listed under section 85.022(b) as specifically tailored to the facts presented. Additionally, the trial court was authorized to include the prohibition listed under section 85.021(1)(A)(i), prohibiting Matthew from removing the children from Corinne's possession as this was also a reasonable condition for protection of the children and Corinne. Having done this, it was incumbent for the trial court to have communicated with the Michigan court as soon as possible once the trial court was aware of the simultaneous proceeding pending there, after having stayed any further proceedings in it's court. See Tex. Fam.Code Ann. § 152.206(b) (Vernon 2002).[3] If the Michigan court indicates to the trial court that Michigan is the more appropriate forum, the trial court shall dismiss the pending temporary ex parte protective order and application, but only when the trial court is satisfied that the Michigan court has entered a substantially similar order that would protect Corinne and the children from family violence, especially during the pendency of the divorce proceeding. See Tex. Fam.Code Ann. §§ 152.206(b), 152.204(c) (Vernon 2002). Should laws similar to Texas's Title 4 exist in Michigan, the trial court should inquire as to the time necessary for the Michigan court to enter such an order and inform the Michigan court that the temporary ex parte protective order would remain in effect until further notice from the Michigan court. Such communication with the Michigan court would permit the trial court to specify in the temporary protective order the "period that the court considers adequate to allow the person seeking an order to obtain an order from the state having jurisdiction[.]" See Tex. Fam.Code Ann. § 152.204(c) (Vernon 2002).
To sum up, we find that the trial court had temporary emergency jurisdiction under section 152.204(a) to enter a temporary protective order limited in scope to provisions that would ensure the physical safety of Corinne and the children. Having learned of the pending divorce proceeding in Michigan, and having determined from the face of Corinne's application and affidavit that Michigan was the home state of the children under the provisions of Chapter 152, the trial court was limited in taking any further action with regard to the temporary protective order until it communicated with the Michigan court in which the divorce proceeding was pending. See Tex. Fam.Code Ann. §§ 152.204(c), 152.206(b) (Vernon 2002). Failing to communicate with the appropriate Michigan court was error.
It was also error to include in the July 30, 2003, protective order any conditions directed to Matthew that were not reasonably related to emergency protection from family violence, such as (1) conditions referring to "property mutually owned or *200 leased by the parties," (2) the awarding of child support payments of $199.69 to Corinne, and (3) the completion of a "battering intervention and prevention program" and the reporting of said completion to the trial court. As to these three provisions, the trial court exceeded the scope of its temporary jurisdiction and said provisions are therefore void. The remaining provisions reasonably relating to the protection of Corinne and the children from family violence continue in full force and effect as they were a product of the trial court's temporary jurisdiction under section 152.204(a).
Having found that the trial court had the limited jurisdiction to issue a temporary emergency protective order, we also find that we have jurisdiction to review said order as, having disposed of all parties and issues for which it had jurisdiction, it was a final, appealable order. Having exercised temporary emergency jurisdiction under section 152.204(a), and having learned that a divorce proceeding was pending in the State of Michigan, and having also been presented with undisputed evidence that the children's home state was Michigan, the trial court was limited in taking any further actions, after having issued the temporary emergency protective order, to the provisions of sections 152.204(c) and 152.206(b). Section 152.204(c) is applicable to a trial court who exercises temporary emergency jurisdiction AND there is either a prior child custody determination that is entitled to enforcement under Chapter 152, or there is a pending custody proceeding in a court in the child's home state. In our case, a pending divorce with a child custody issue existed in Michigan, the children's home state. If these conditions exist, section 152.204(c) provides that "any order issued by a court of this state under this section must specify in the order a period that the court considers adequate to allow the person seeking an order to obtain an order from the [home state]. The order issued in this state remains in effect until an order is obtained from the other state within the period specified or the period expires." The "order issued in this state" is the July 30, 2003, protective order. As we have interpreted the proper scope of the trial court's jurisdiction under section 152.204(a) and (c), the protective order disposes of all parties (Matthew, Corinne, M.G.M. and V.A.M.), and all issues (emergency protection for Corinne, M.G.M. and V.A.M. from future acts of family violence by Matthew). The only future action anticipated, as previously noted, would be for the trial court to dismiss the temporary protective order when it is satisfied that the Michigan court has provided Corinne and the children adequate court-ordered protection from family violence under Michigan's laws. Therefore, we are confident that the July 30, 2003, protective order disposed of all parties and all issues over which the trial court had jurisdiction to rule. See Lehmann v. Har-Con Corp., 39 S.W.3d 191, 205 (Tex.2001). As such, it was a final and appealable order and we have jurisdiction to entertain the appeal. Matthew's appellate issue two complaining that the trial court was without subject-matter jurisdiction is overruled in part and sustained in part.
We now turn to Matthew's first issue alleging error by the trial court in finding he waived his special appearance motion. Under the facts and circumstances contained in the record, we agree with Matthew that the trial court erred in ruling that he waived his special appearance plea by making a general appearance on June 24, 2003. As previously noted, the temporary emergency ex parte protective order was extended by agreement of the parties on June 24, 2003. This extended *201 order expressly provided that Matthew's trial counsel "agreed to extend the Ex-Parte Protective Order ... subject to and without prejudicing or waiving any plea to the jurisdiction or special appearance of [Matthew]." We cannot permit a trial court to find a party's special appearance motion waived because the party entered into an agreed collateral order, signed by the trial judge, which explicitly recognized that the party did not waive special appearance by entering into the agreed order. A trial court abuses its discretion when it, inter alia, acts arbitrarily or unreasonably. See Stelly v. Papania, 927 S.W.2d 620, 622 (Tex.1996). Here, the trial court abused its discretion in ruling that Matthew waived his plea of special appearance after signing an order explicitly recognizing the special appearance issue had been preserved. Our holding does not decide the personal jurisdiction issue regarding Matthew. We simply hold that the trial court erred in finding he waived a hearing and ruling on the merits.[4] Matthew's first issue is sustained.
Finally, we overrule Matthew's fourth issue complaining of the lack of "credible" evidence to prove likelihood of future violence. Matthew does not clearly argue whether he is complaining of "legal" or "factual" insufficiency. When the trial court acts primarily as a factfinder, appellate courts normally review its determinations under the legal and factual sufficiency standards. See In re Doe, 19 S.W.3d 249, 253 (Tex.2000). When a party attacks the legal sufficiency of an adverse finding of an issue on which he did not have the burden of proof at trial, he must show on appeal that there was no evidence to support the adverse finding. Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex.1983). In reviewing a "no evidence" point, we must view the evidence in a light that tends to support the finding and disregard all evidence and inferences to the contrary. Southwest Key Program, Inc. v. Gil-Perez, 81 S.W.3d 269, 274 (Tex.2002). If more than a scintilla of evidence exists to support the finding, the no-evidence challenge fails. Formosa Plastics Corp., U.S.A. v. Presidio Engineers and Contractors, Inc., 960 S.W.2d 41, 48 (Tex.1998).
When a party attacks the factual sufficiency of an adverse finding on an issue on which he did not have the burden of proof at trial, he must show on appeal that there is insufficient evidence to support the adverse finding. See Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co., 766 S.W.2d 264, 275-76 (Tex.App.-Amarillo 1988, writ denied). To conduct this review, we must examine the entire record and consider and weigh all the evidence, both in support of, and contrary to, the challenged finding. See Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex.1996); Plas-Tex, Inc. v. U.S. Steel Corp., 772 S.W.2d 442, 445 (Tex.1989). We must uphold the finding unless the evidence that supports it is so weak as to be clearly wrong or manifestly unjust. See In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, 661 (1951); Raw *202 Hide Oil & Gas, 766 S.W.2d at 275-76. The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. See GTE Mobilnet of South Tex. v. Pascouet, 61 S.W.3d 599, 615-16 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). We will not substitute our judgment for that of the trial court merely because we might reach a different conclusion. Maritime Overseas Corp. v. Ellis, 971 S.W.2d 402, 407 (Tex.1998).
From the record before us we see that Corinne indicated in her affidavit in support of her application that Matthew's violence toward her dated back to 1996, referring to two assaultive events against her. Also, in 1997, Matthew was apparently processed for a family violence offense and was required to attend court-ordered counseling for anger management. She also described circumstances of emotional and mental abuse during the marriage. She also described the various events of physical abuse Matthew directed toward the children in the early part of 2003. The record also contains the reporter's record of the trial court's interview with the children. The following is a portion of the interview of M.G.M., who was six years' old at the time of the interview:
THE COURT: No. And where on your body has he [Matthew] hit you before?
M.G.M.: Usually in the back.
THE COURT: Okay. On your bottom? Okay. Well if we could change your Daddy Matt some way 
M.G.M.: There is no way. Never will you do that.
THE COURT: No? Have you tried?
M.G.M.: Never works.
During his testimony, Matthew denied being violent with Corinne. He admitted he was arrested in 1997, for the family violence against Corinne, but only pleaded guilty to the subsequent criminal charge because Corinne agreed to move back to Michigan with M.G.M. Matthew testified that it was Corinne who was the harsh disciplinarian regarding the children. He did admit that his spanking M.G.M. during the Easter Sunday incident, which precipitated Corinne's move to Texas and application for the instant protective order, "was excessive, and I do regret the whole  the entire event."
From just the portions of the above-described testimony, we find both legally and factually sufficient evidence existed for the trial court to find that family violence was likely to occur in the future. See Tex. Fam.Code Ann. § 85.001(a)(2) (Vernon 2002). It was for the trial court alone to determine the credibility of the witnesses, and the trial court could have disregarded Matthew's denials in their entirety. We overrule issue four. We do not reach issue three as it argues, substantively, lack of personal jurisdiction by the trial court over Matthew. We have already indicated that the trial court merely found Matthew waived the issue by making a general appearance. Therefore, a substantive analysis of personal jurisdiction was not a part of the trial court's ruling and is, therefore, not before us. Having sustained Matthew's first issue and part of Matthew's second issue, we reverse the July 30, 2003, order of the trial court in part, and affirm it in part, and remand the cause to the trial court for further proceedings consistent with this opinion.
AFFIRMED IN PART AND REVERSED IN PART AND REMANDED.
DAVID GAULTNEY, Justice, concurring.
I concur. I agree with the majority's resolution of issues 1, 3, and 4. On issue 2, I agree the trial court erred by not following section 152.204 in exercising its authority *203 to make an emergency temporary custody determination. See Tex. Fam.Code Ann. § 152.204 (Vernon 2002). The trial court apparently did not consider Chapter 152 applicable to this Title 4 protective order proceeding. However, this proceeding involved, in part, a child custody determination, and the court was required by section 152.204 to communicate with the Michigan court "to resolve the emergency, protect the safety of the parties and the child, and determine a period for the duration of the temporary order."
The trial court signed a final protective order disposing of all parties and issues before the trial court without regard to section 152.204. 1 agree this Court has jurisdiction to review that order. See Ulmer v. Ulmer, 130 S.W.3d 294, 296-97 (Tex.App.-Houston [14th Dist.] 2004, no pet.). But see Saavedra v. Schmidt, 96 S.W.3d 533, 550 (Tex.App.-Austin 2002, no pet.).
However, I differ from the majority's view of the scope of the applicability of section 152.204 to a Title 4 protective order. I read section 152.204 as governing the Texas court's authority to make a temporary emergency child custody determination in the interstate context, not as governing all aspects of the Texas court's protective order authority. The Family Code has a provision governing child support jurisdiction in the context of a simultaneous support proceeding in the child's home state. See Tex. Fam.Code Ann. § 159.204 (Vernon Supp.2005). I believe that section would govern the support order jurisdiction here, not section 152.204; but the applicability of section 159.204 is not briefed by the parties. Apart from these restrictions concerning custody and support order jurisdiction, the trial court has broad jurisdiction under Title 4 to protect Corrine and the children. I would not declare the remaining provisions of the protective order void solely because of section 152.204.
The Family Code recognizes a court may have authority over some portions of a suit and not others. See Tex. Fam.Code Ann. § 102.012(a) (Vernon 2002). The Code provides:
(b) The court's authority to resolve all issues in controversy between the parties may be restricted because the court lacks:
(1) the required personal jurisdiction over a non-resident party;
(2) the required jurisdiction under Chapter 152[Uniform Child Custody Jurisdiction and Enforcement Act]; or
(2) the required jurisdiction under chapter 159[Uniform Interstate Family Support Act].
Tex. Fam.Code Ann. § 102.012(b) (Vernon 2002). All three restriction provisions may apply to this proceeding. Even so, the Code contemplates that a Title 4 protective order may be issued on behalf of a child who is subject to the jurisdiction of another court. See generally In re Salgado, 53 S.W.3d 752, 760-62 (Tex.App.-El Paso 2001, orig. proceeding)(two Texas Courts).[5] Section 152.204 does not restrict the broad power of a trial court, beyond the interstate custody issues governed by the section, to enter a protective order under Title 4.
*204 Nevertheless, I concur with the reversal and remand for further proceedings consistent with the Family Code.
NOTES
[1] Under section 152.102(3), " 'Child custody determination' means a judgment, decree, or other order of a court providing for legal custody, physical custody, or visitation with respect to a child. The term includes permanent, temporary, initial, and modification orders. The term does not include an order relating to child support or another monetary obligation of an individual."

Section 152.102(4) provides "`Child custody proceeding' means a proceeding in which legal custody, physical custody, or visitation with respect to a child is an issue. The term includes a proceeding for ... protection from domestic violence in which the issue may appear.
[2] Section 152.102(7) defines "home state" as 11 the state in which a child lived with a parent... for at least six consecutive months immediately before the commencement of a child custody proceeding." Tex. Fam.Code Ann. § 152.102(7) (Vernon 2002).
[3] Section 152.206(b) provides that "before" hearing a child custody proceeding, the trial court "shall" examine the court documents and other information supplied by the parties pursuant to section 152.209, and if the trial court determines that a child custody proceeding has been commenced in the child's home state, the trial court "shall" stay its proceedings and communicate with the home state court. If the home state court does not determine that the trial court is a more appropriate forum, then the trial court "shall" dismiss the proceeding. Id. (emphasis added).

Section 152.206(b) is applicable "[elxcept as otherwise provided in Section 152.204[.]" Except for the provision in section 152.204(c) that the temporary emergency order will remain in effect until an order is obtained from the home state, section 152.206(b) does not appear to conflict under the facts and circumstances of the instant case.
[4] Generally, custody determinations by themselves are considered "status" adjudications as they focus on the "status" of the child (child's care, protection, training, and relationship) and are not dependent upon personal jurisdiction over the parents. See In the Interest of S.A.V., 837 S.W.2d 80, 84 (Tex.1992); Creavin v. Moloney, 773 S.W.2d 698, 703 (Tex.App.-Corpus Christi 1989, writ denied). However, adjudications of child support, visitation expenses, or other "property"-type issues usually require a court to acquire personal jurisdiction over the parent affected by the adjudications. See Kulko v. Superior Court of California In and For the City and County of San Francisco, 436 U.S. 84, 91, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978); Shaffer v. Heitner, 433 U.S. 186, 198-202, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977).
[5] Though the parties have not cited a conflicting order from the Michigan court, section 83.005 of Title 4, addressing ex parte temporary protective orders, provides: "During the time the order is valid, a temporary ex parte order prevails over any other court order made under Title 5 to the extent of any conflict between the orders." See Tex. Fam.Code Ann. § 83.005 (Vernon 2002). This is a final order, of course.